[Civ. No. 3756.   Fourth Dist.   Mar. 30, 1949.]

NORTHWEST CASUALTY COMPANY (a Corporation), Respondent, v. H. C. LEGG et al., Appellants.

20

West, Vizzard, Howden & Baker and Dorris, Fleharty & Phillips for Appellants.

Mack & Bianco for Respondent.

BARNARD, P. J.—On July 29, 1946, the plaintiff issued to "H. C. Legg and O. H. Lightsey dba Kern Neon Company" a standard form liability policy covering bodily injury and property damage caused by accident arising out of the ownership or use of a 1941 International pickup owned by the partnership. The policy covered a period of one year and its insurance provisions were made applicable to the use of other automobiles under certain specified conditions.

On September 15, 1946, H. C. Legg, while driving a 1936 Chevrolet automobile, collided with the defendant Beatrice

Grindstaff, causing personal injuries. The accident occurred while Mr. Legg was taking his wife out to dinner. This Chevrolet was registered in the name of the defendant Eleanor Lowe Johnston, who is the mother of Mrs. Legg.

A controversy having arisen between the parties with respect to the interpretation of the insurance policy above mentioned and as to whether it covered this accident, the plaintiff brought this action for declaratory relief, praying that the court take jurisdiction and determine whether this policy insured the defendants, or any of them, for any possible liability to the defendant Grindstaff.

The controversy here is with respect to that portion of the policy covering the use of other automobiles. So far as material here, this portion reads as follows:

"V. USE OF OTHER AUTOMOBILES:

"Such insurance as is afforded by this policy for bodily injury liability and for property damage liability with respect to the automobile classified as 'pleasure and business' applies (1) to the named Insured, if an individual and the owner of such automobile or if husband and wife either or both of whom own such automobile, and (2) to the spouse of such individual if a resident of the same household, the employer of such named Insured or spouse, the parent or guardian of such named Insured or spouse, if a minor, and a partnership in which such named Insured or spouse is a partner, as insured, with respect to the use of any other automobile by or in behalf of such named Insured or spouse. This insuring agreement does not apply:

"(a) To any automobile owned in full or in part by, registered in the name of, hired as part of a frequent use of hired automobiles by, or furnished for regular use to, the named Insured or a member of his household. . . ."

After a trial, the court found that at the time of the accident this Chevrolet was registered to Mrs. Johnston, who was then living with a son in Oakland; that the Chevrolet was then and for several months had been furnished to Mr. and Mrs. Legg for their regular use, and had been regularly used by them; that Mrs. Legg was a member of the household of H. C. Legg and was the equitable owner of the Chevrolet; and that Mr. and Mrs. Legg were using the Chevrolet at the time of the accident pursuant to an arrangement between themselves and Mrs. Johnston for its regular use by them. The court concluded that this policy did not insure any of the defend-

ants against liability as a result of this accident, and that such risk was expressly excluded under the exception provided by paragraph V (a) as above quoted. Judgment was entered accordingly and defendants have appealed.

■ It is contended that the finding that the Chevrolet was furnished to Mr. and Mrs. Legg for their regular use, is not supported by the evidence. The evidence discloses the following facts. Mrs. Johnston, to whom the Chevrolet was registered, lived with Mr. and Mrs. Legg at Taft. She was rendered a helpless invalid by a stroke in January, 1945, and was never able to drive the car thereafter. Mrs. Legg used the car on occasions after January, 1945, to run errands for her mother. Mrs. Legg sold her own car in September, 1945, "and from that time on, as necessity demanded, I used Mother's car." She then used the Chevrolet for any use that she wanted, and had the use of it whether it was for her mother, for herself, for her family, or for business. She had the keys and used it whenever she wanted to and for all purposes and occasions. On May 1, 1946, Mrs. Johnston was taken to Oakland to stay with a son for the summer. The Chevrolet was left at the family home in Taft, and was then in disrepair. In June, 1946, the Leggs moved to Bakersfield, taking the Chevrolet with them. In August, 1946, they had the Chevrolet repaired. Mrs. Legg then continued to use the car and, with her permission, Mr. Legg also used it at times. Mrs.. Legg had control of the car and used it whenever she wanted to. The only reasonable inference from the evidence is that Mr. Legg was given the same privilege and that he used it whenever he desired. Mrs. Legg testified that about January or February of 1946, her mother gave the car to her "for my use." Shortly after the accident Mrs. Legg signed a statement in which she said that the Chevrolet was given to her by her mother in January or February, 1946, and that she was sending in the certificate of ownership for transfer to her name. Mr. Legg, on September 16, 1946, signed a statement in which he said:

"This Chevrolet was not being used by my family or myself until about six weeks ago when I took it to the Automotive Service in Bakersfield and spent about $200.00 in having it mechanically overhauled. Actually this car was given to my wife by her mother but the registration was never changed; it is so registered to Mrs. Johnston. As we had use for the car, we had it mechanically repaired and have been using it

during the last month or six weeks. There is no specific insurance on this car."

This evidence very clearly shows that this car was furnished for the regular use of Mrs. Legg, who is a member of Mr. Legg's household, and, with the only reasonable inferences therefrom, adequately supports the finding here questioned. (*Pacific Auto. Insurance Co.* v. *Lewis,* 56 Cal.App.2d 597 [132 P.2d 846].) In discussing a similar question the court, in *Rodenkirk* v. *State Farm etc. Insurance Co.,* 325 Ill.App. 421 [60 N.E.2d 269], an Illinois case, said:

"The exclusion from coverage of other cars owned by the insured as well as cars owned by the members of his household and the exclusion of cars furnished for regular use to the insured or a member of his household would seem to indicate the intention of the company to protect itself from a situation where an insured could pay for one policy and be covered by the insurance in driving any car that he decided to use whether owned by him or members of his family or cars that had been furnished for his regular use; in other words, cars under his control that he could use at will and might use often."

■ It is also contended that the finding that Mrs. Legg was the equitable owner of the Chevrolet is not supported by the evidence. While this finding is immaterial, we think it is sufficiently supported by the evidence that the car had been given to Mrs. Legg but the registration had not been changed. (*LeGrand* v. *Russell,* 52 Cal.App.2d 279 [126 P.2d 136]; *Carpenter* v. *Devitt,* 49 Cal.App.2d 473 [122 P.2d 79].)

■ It is next contended that under the provisions of section 415 of the Vehicle Code this policy was required, as a matter of law, to cover the operation of this Chevrolet by Mr. Legg. Subdivision (a) of that section provides that a "motor vehicle liability policy," as referred to in that code, shall meet three requirements. The first of these reads:

"(1) Such policy shall designate by explicit description or by appropriate reference all motor vehicles with respect to which coverage is thereby intended to be granted."

Subdivision (b) sets out four requirements, in the alternative. It reads:

"(b) Such policy shall (1) Cover the assured in the use or operation of all vehicles owned by him or registered in his name but not insuring such person when operating any motor vehicle not owned by him, or

"(2) Cover the assured in the use or operation of all vehicles owned by him or registered in his name and insure such person in the operation of any motor vehicle not owned or registered in his name, or

"(3) Cover the assured only in the operation of any motor vehicle not owned by him nor registered in his name, or

"(4) Cover the assured only in the operation of a certain vehicle or vehicles not owned by him nor registered in his name."

It is argued that since the policy here in question covers the assured in the operation both of owned automobiles and at least some not owned it falls within the requirement (b) (2); that the provisions of (b) (2) thus automatically become a part of the policy; and that it follows that this policy insures Mr. Legg in the operation of all automobiles not owned by him or registered in his name, including this Chevrolet. In other words, it is argued that if the policy purports to cover the assured in the operation of any vehicle, in addition to those owned by him or registered to him, it must cover his operation of each and all vehicles not owned by him.

Section 415 is a part of the Financial Responsibility Law. As such, it is directly related to the matter of suspending and reinstating operators' licenses in connection with proving ability to respond in damages for injuries caused to others. Whether or not these provisions are controlling with respect to the contract which an insurer may make with an insured, and their relation to the provisions and requirements contained in the Insurance Code, need not be here decided.

We are unable to agree with the contention that section 415(b) (2) must be interpreted as requiring that a policy covering an assured in the use of vehicles owned by him or registered in his name, and also covering certain automobiles not owned by him, must cover him in the operation of all automobiles not owned or registered by him. While the statute is not too clearly worded, it would appear to have been intended to authorize policies covering the insured in the operation of all automobiles not owned by him, or limiting the coverage to certain automobiles not owned by him. Subdivisions (b) (3) and (b) (4) seem to so provide where cars owned by the assured are not also covered. No good reason appears for making a distinction in this regard, in cases where the policy also covers a car owned by the assured. Moreover, subdivision (b) (1) permits coverage of an owned car, with-

out covering any car not owned by the assured, and (b) (2) permits coverage of an owned car, and also covering "any" car not owned by the assured. It would be unreasonable to think that it was intended, where the policy covers cars owned by the assured, to permit an exclusion of coverage as to all cars not owned by him, but to forbid an exclusion of coverage on only a part of such other cars.

Subdivision (b) (2) uses the word "all" in referring to vehicles owned by the assured and in the same sentence uses the word "any" in referring to a "vehicle," in the singular, not owned by him. The appellants would read this word "any" as intended to mean every and all. Not only does this appear unreasonable in view of the context but we think (b) (2) must be read in connection with (a) (1), which provides that such a policy shall designate the motor vehicles with respect to which coverage is intended to be granted. The word "any" is often used to mean one or more, and does not necessarily mean "all." As used in (b) (2), it seems to have been intended to mean any one or more vehicles which are designated in the policy, as required by (a) (1), to which coverage was intended to be granted. Any other interpretation of (b) (2) would seem unreasonable when section 415 is viewed as a whole, and especially in the light of long continued common usage and experience. The policy here in question clearly excepted the use of this Chevrolet from its coverage, under the circumstances which here appear, and it must be held that there is nothing in section 415 which, as a matter of law, enlarged or extended the coverage as stated and limited in the policy, and agreed upon by the parties as the basis for the premium charged.

It is further contended that this policy should be interpreted as covering this accident since Mr. Legg was at the time driving the car on business of the copartners, and since paragraph V of the policy refers to a partnership in which the insured is the partner. Also, that the policy is ambiguous as to whether coverage was furnished to the copartners under the facts of this case, that such ambiguity should have been construed in favor of the appellants, and that, in any event, the other partner, O. H. Lightsey, was entitled to judgment in his favor. There is ample evidence that Mr. Legg was not on partnership business at the time of the accident. Moreover, Lightsey was not driving the car and was not covered unless Legg was covered. The wording of the policy clearly excluded

coverage on this Chevrolet, under the circumstances here appearing, and there is no ambiguity in the policy in this respect regardless of what may be said concerning the language of the statute. In our opinion the court's interpretation of the statute, and of the policy, was a reasonable one.

■ Finally, it is contended that the complaint herein failed to state facts constituting a cause of action for declaratory relief. The facts already stated are a sufficient answer to this contention, which is without merit. (*Columbia Pictures Corp.* v. *DeToth*, 26 Cal.2d 753 [161 P.2d 217, 162 A.L.R. 747]; *Maguire* v. *Hibernia Sav. & Loan Soc.*, 23 Cal. 2d 719 [146 P.2d 673, 151 A.L.R. 1062]; *Wolas* v. *Crescent Commercial Corp.*, 86 Cal.App.2d 740 [195 P.2d 471].)

The judgment is affirmed.

Griffin, J., and Mussell, J., concurred.