CAMPBELL et al.

v.

AETNA CASUALTY AND SURETY CO.

No. 6711.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 6, 1954.

Decided March 16, 1954.

A. G. Stone, Charleston, W. Va. (Harry B. Lambert, Donald O. Blagg, Koontz & Koontz, Rummel, Blagg & Stone, Charleston, W. Va., on the brief), for Harold E. Campbell and William E. Campbell.

J. Campbell Palmer, III, Robert L. Elkins, Charleston, W. Va., for Aetna Casualty & Surety Co.

Robert W. Lawson, Jr., Charleston, W. Va. (Steptoe & Johnson, Clarksburg, W. Va., and Wilbert E. McInerney, Washington, D. C., on the brief), for Car & General Ins. Corp.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

This suit was brought by Aetna Casualty and Surety Company for a declaratory judgment to determine whether it has any liability under a policy of automobile insurance issued by it to Harold E. Campbell who was a participant in a collision between two automobiles on January 10, 1952 whereby personal injuries and property damage were inflicted. The policy insured against liability for claims arising out of the operation of a 1947 DeSoto Suburban automobile belonging to the insured limited in amount to $100,000 for injury to each person, $300,000 for each accident and $25,000 for property damage. The defendants in the suit are Harold E. Campbell, the insured, his son, William E. Campbell, Frank Kranak, Jr., who was injured while driving the other colliding car, and Car and General Insurance Corporation, Ltd., a New York corporation, which had issued one or more automobile policies to William E. Campbell who was found to be the owner of the car driven by his father in the collision. The suit was precipitated by a suit instituted on January 15, 1952 by Kranak against the two Campbells in Washington County, Pennsylvania. Kranak refused to come into the instant suit and the case proceeded to hearing against the other defendants.

A second automobile policy issued by Aetna to the father was brought into the case by his answer to the complaint in which he claimed that if he was not protected by the first policy he was protected by the second. The second policy insured against liability for claims arising out of the operation of a 1947 Ford Vanette one and a half ton truck which the father used in his occupation of regional field supervisor in charge of the sale and distribution of merchandise for the Snap-On Tools Company.

Neither of these Aetna policies related to the car driven by the father at the time of the collision which was a 1951 DeSoto 4-door sedan and is hereafter referred to as the "collision car". It is nevertheless contended that the father was protected while driving this car at the time of the accident by certain provisions in the Aetna policies.

The collision car was bought by the son on November 10, 1951 and it is contended by the Campbells that it was

transferred by the son to the father on December 17, 1951, less than thirty days before the accident on January 10, 1952. Hence it is said that the father was protected by the Newly Acquired Automobile clause [1] of the Aetna policy on the father's Suburban car which provides in effect that if the named assured, who is the owner of the car described in the policy, acquires another automobile and notifies the Insurance Company within thirty days of its delivery to him, it replaces the car described in the policy.

Whether the collision car was transferred to the father by the son prior to the accident is a hotly disputed issue in the case. The District Judge carefully considered the evidence relating to the transfer of the collision car from the son to the father and reached the conclusion that the transfer did not take place and that the car belonged to the son at the time of the collision. The transactions between the father and the son, and between them and the insurance companies in regard to a number of automobiles were numerous and complicated.[2] They

included not only the collision car but also the Suburban DeSoto of the father covered by the Aetna policy which the son traded in with his father's consent for a 1951 DeSoto Sportsman car on November 10, 1951. As the result of these transactions the father on December 17, 1951 gave up all title to the Suburban car which he had previously used for his private as distinguished from his business purposes, and in place thereof acquired possession and thereafter regularly used the collision car from November 10, 1951 to the day of the collision.

■ The judge rejected as incredible the testimony tending to show that the son, who was in straitened financial circumstances, swapped his nearly new 1951 DeSoto sedan, valued at $2,300 at the time of the collision, for his father's 1947 Suburban automobile which was worth only $1,100 for trade-in purposes. The judge's finding was supported by several written statements made by the father after the collision indicating that the collision car belonged to the son, and by the fact that the son collected the in-

---

1. *Newly Acquired Automobile*—an automobile, ownership of which is acquired by the named Insured who is the owner of the described automobile, if the named Insured notifies the Company within thirty days following the date of its delivery to him, and if either it replaces an automobile described in this policy or the Company insures all automobiles owned by the named Insured at such delivery date; but the insurance with respect to the newly acquired automobile does not apply to any loss against which the named Insured has other valid and collectible insurance. The named Insured shall pay any additional premium required because of the application of the Insurance to such newly acquired automobile.

2. These transactions related to the ownership by the father of the Suburban car covered by one of the Aetna policies; the purchase by the son of a 1946 Chrysler automobile on June 21, 1951; the issuance on September 10, 1951 of a Car and General policy covering the Chrysler with limits of $25,000 for one person, $50,000 for one accident and $5,000 for property damage; the trade in on this car on April 21 in connection with the purchase of a 1951 DeSoto 4-door sedan; the transfer

of the Car and General policy to this car; the issue of a property damage policy on this car by Service Fire Insurance Company in connection with the financing of the purchase; the transfer of possession of this car to his father in exchange for the father's Suburban car on November 1, 1951; the trade in of the Suburban car in connection with the purchase by the son of a 1951 DeSoto Sportsman automobile; the transfer of title to the Sportsman by the father on December 17, 1951; the collection of the proceeds of the Service policy by the son after the accident and the application of the money to the payment of the son's indebtedness on his Sportsman car; the alleged issuance of a promissory note from the son to the father for this amount; endorsements on the Car and General policy on February 25, 1952 by the underwriting agent of Car and General purporting to cover the collision car from September 21, 1951 to January 10, 1952, and thereafter to cover the Sportsman car; the purchase of a 1952 Chrysler car by the father after the collision, and the endorsement on February 7, 1952 by the underwriting agent of Aetna on the Suburban policy so as to transfer the coverage of the policy to the new car.

surance money on the collision car and applied it to the payment of a balance due on his Sportsman car. The judge rejected the story that the son gave his father a promissory note for the money so used. We accept the judge's findings as they are fully supported by the evidence.

It follows from these findings that between December 17, 1951 and January 10, 1952 the father owned no car to which the Aetna Suburban automobile policy related. If he had become the owner of the collision car on that date he could have availed himself of the Newly Acquired Automobile provision of the policy on the Suburban car and would have been covered for thirty days after delivery; but since he did not acquire this car the described provision of the policy did not come into effect. The father had paid the premium on the Aetna Suburban policy for the year beginning September 17, 1951 and it follows from the above finding of fact that after December 17, 1951, when he transferred the car, until February 7, 1952,

when the insurance was transferred to a new car purchased by him after the accident, he had no car to which the policy could attach. This circumstance, however, is immaterial with respect to the point now under consideration. It might give rise to a claim on the part of the insured for the return to him of the amount of the unearned premium; but it cannot extend the provisions of the policy to a situation to which they did not relate.[3]

■■ The father makes the alternative contention that he was protected by the Use of Other Automobiles provision which is found in both Aetna policies and states in effect that if the named insured owns the automobile classified in the policy as "pleasure and business" the insurance afforded by the policy applies with respect to any other automobile but does not apply to any automobile "furnished for regular use to the named insured."[4] It will be noted that the privilege of this clause is also limited to an insured who owns the automobile described in the policy and there-

---

3. The appellants take the position that the limitations of the benefit of the policy provisions above discussed to the owner of the car described in the policy is not effective. For this contention they rely upon the decision of the Supreme Court of New Hampshire in Phoenix Indemnity Co. v. Conwell, 94 N.H. 146, 47 A.2d 827, 1 A.L.R.2d 819, where the court held that under the statute of that State no exclusion, condition or other language contained in the policy would operate to defeat or avoid the policy so as to bar recovery for accidents within the limits of liability. This case has no relevance here because such a provision does not appear in the West Virginia statute of 1951 which was in effect when the policies in suit were issued. See 1953 Cumulative Supp. to the West Virginia Code, § 1721(521) (12f-1) [17D-4-12]. The West Virginia statute contains the provision that no statement by the insured and no violation of the terms of the policy shall operate to defeat or avoid the policy which provision has not been construed by the Supreme Court of West Virginia. We are, however, not dealing in the present case with statements or violations of the terms of the policy by the insured, but with the effect of an exclusion or restric-

tion contained in the insurance contract. For the effect of violation of provisions of policy requiring insured to cooperate or make reports prior to the Act of 1951 see Marcum v. State Automobile Mutual Ins. Co., 134 W.Va. 144, 59 S.E.2d 433; Ohio Farmers Indemnity Co. v. Charleston Laundry Co., 4 Cir., 183 F.2d 682.

4. V. *Use of Other Automobiles*—If the named Insured is an individual who owns the automobile classified as "pleasure and business" or husband and wife either or both of whom own said automobile, such insurance as is afforded by this policy for bodily injury liability, for property damage liability and for medical payments with respect to said automobile applies with respect to any other automobile, subject to the following provisions:

\* \* \* \* \* \* \*

(b) The insuring agreement does not apply:

(1) to any automobile owned by, hired as part of a frequent use of hired automobiles by, or furnished for regular use to the named Insured or a member of his household other than a private chauffeur or domestic servant of the named Insured or spouse.

\* \* \* \* \* \* \*

fore the Aetna Suburban policy would afford no protection in this respect to the insured. It is admitted, however, that the father did own the Ford Vanette truck at the time of the accident, and hence, so far as ownership is concerned, the father would be entitled to the benefit of the clause if it be assumed that the policy on the truck covered the vehicle for pleasure and business, and not for commercial purposes only. This is a disputed point in the case which the judge resolved in favor of the Insurance Company. It is, however, not necessary to consider the point on this appeal for in any event the provision does not apply to any automobile furnished for regular use to the named insured. The evidence shows plainly that the father received possession of the collision car for his regular use when he gave up possession of the Suburban car to his son on November 10, 1951, followed in the next month by a complete transfer of the paper title. From November 10, 1951 until the day of the collision, the father had no other car for the personal use of himself and his family. He used the truck for business purposes and the collision car took the place of his old Suburban.

The great weight of authority is in accord with the interpretation of this provision by Judge Chesnut in Aler v. Travelers Indemnity Co., D.C.Md., 92 F.Supp. 620, 623, where he said:

"This case involves the construction and application of the so-called 'drive other automobiles' clause of the present standard automobile liability policy. The general purpose and effect of this provision of the policy is to give coverage to the insured while engaged in the only infrequent or merely casual use of an automobile other than the one described in the policy, but not to cover him against personal liability with respect to his use of another automobile which he frequently uses or has the opportunity to do so. More specifically the evident intention of the limitation with respect

to other automobiles is to prevent a situation in which the members of one family or household may have two or more automobiles actually or potentially used interchangeably but with only one particular automobile insured. That this is the general purpose of the provision is well and cleary stated in the annotation on the subject in 173 A.L.R. 901. And see Lumbermens Mutual Cas. Co. v. Pulsifer, D.C.Me., 41 F.Supp. 249; Rodenkirk v. State Farm Mut. Auto Ins. Co., 325 Ill.App. 421, 60 N.E. 269."

See also, Farm Bureau Mut. Auto. Ins. Co. v. Boecher, Ohio App., 48 N.E.2d 895; Island v. Fireman's Fund Ind. Co., 30 Cal.2d 541, 184 P.2d 153, 173 A.L.R. 896; Northwest Cas. Co. v. Legg, 91 Cal. App.2d 19, 204 P.2d 106; Vern v. Merchants Mut. Cas. Co., Sup., 118 N.Y.S.2d 672; Fleckenstein v. Citizens' Mutual Automobile Ins. Co., 326 Mich. 591, 40 N.W.2d 733; cf. Travelers Indemnity Co. v. Pray, 6 Cir., 204 F.2d 821.

■ Likewise the contention is without merit that Aetna is estopped to deny its liability on the Suburban policy by its actions subsequent to the accident. These actions include the retention of the premium on the policy for the entire year, and the acceptance of a renewal premium for the year beginning April 17, 1952, and the failure of the company to deny coverage until seven months after the accident, although it had notice in January of the facts on which it now bases its defense. The delay of the Insurance Company in taking a definite position in the controversy is understandable in view of the complicated factual situation. Moreover, it is manifest that the insured suffered no detriment by the delay; and the insured himself renewed the policy after the present suit was brought. We are not dealing with a forfeiture or cancellation or rescission of a contract, or the acceptance of a premium after knowledge of grounds for rescission or with acts of the company prejudicial to the prosecution of the insured's claim.

The principles of estoppel and waiver do not operate to extend the coverage of an insurance policy after the loss has been sustained. Jones v. Liberty Nat. Life Ins. Co., Ala.App., 47 So.2d 222, 227; Mutual Sav. Life Ins. Co. v. Hall, 254 Ala. 668, 49 So.2d 298; Jersey Ins. Co. v. Roddam, 256 Ala. 634, 56 So.2d 631; Donovan v. New York Cas. Co., 373 Pa. 145, 94 A.2d 570; Providence Washington Indem. Co. v. Varella, D.C. Mass., 112 F.Supp. 732; United Pac. Ins. Co. v. Northwestern Nat. Ins. Co., 10 Cir., 185 F.2d 443.

There remains the appeal of Car and General Insurance Corporation from the judgment of the District Court that the company is liable to defend the Kranak suit and pay any judgment rendered against the Campbells within the limit of a policy issued by it on September 10, 1951 to W. E. Campbell on a 1946 Chrysler sedan. The policy insured against liability for claims arising out of the operation of the car in the amount of $25,000 for injury to each person, $50,000 for each accident and $5,000 for property damages. On September 21, 1951 W. E. Campbell, the insured, traded the car described in the policy to the Kirksey Motor Sales Company of Birmingham, Alabama for a 1951 DeSoto 4-door sedan, the collision car in the instant case; and the judge found that the insured gave the company due notice of the acquisition of the collision car as a replacement for the Chrysler and requested the transfer of the coverage of the policy to the sedan in accordance with the terms of the contract.

Possession of the collision car, as we have seen, was later transferred by the son to the father for regular use and was being driven by the father at the time of the accident. Accordingly the judge found that the company was liable under the omnibus clause of the policy which covered not only the named insured but any one driving the car with his permission. The company contested the finding that the son retained ownership of the collision car but this finding has already been discussed and approved.

The company also denied that the insured gave it notice to transfer the insurance from the Chrysler to the collision car. In this connection the fact is emphasized that the son delivered the collision car to his father and received in exchange the father's DeSoto Suburban car and traded the latter on November 10, 1951 for a new DeSoto Sportsman, which the son drove until the time of the accident without any insurance thereon, if his story is true. It is urged that it is highly improbable that the son would transfer the insurance to the car used by his father and drive the Sportsman car without any protection. Also emphasized, as to the credibility of the son, is the finding of the judge that the son falsely testified as to the ownership of the collision car, and numerous other statements and actions, reflecting adversely upon his character and conduct, are referred to. It was, however, proved and not disputed, that on February 25, 1952, six weeks after the accident and with notice thereof, Car and General furnished endorsements on the Car and General policy now in suit, extending the coverage first, to the collision car from September 21, 1951, to January 10, 1952, and second, to the Sportsman car as of January 11, 1952, the day after the accident. This conduct on the part of the insurance company, as the judge found, indicated strongly not only that there was no change in the ownership of the collision car but also that the son had given notice to the company for the transfer of the insurance in November, 1951 as above set out.

The judge was not given the benefit of any testimony on the part of the agent of the company in denial of the request for the transfer of the insurance or the making of the endorsements upon the policy after the accident. Under these circumstances the finding and conclusions of the judge with respect to the liability of the company on this policy must be approved.

The judgment of the District Court is affirmed, the costs to be paid one-half by H. E. Campbell and W. E. Campbell, and one-half by Car and General Insurance Corporation.