**ALLSTATE INSURANCE COMPANY, a corporation, Plaintiff,**

v.

**William Howard COX and James Gibson, Defendants.**

No. 1771.

United States District Court
S. D. California, N. D.
Aug. 22, 1957.

Dudley W. Sheppard of Hansen, Mc-Cormick, Barstow & Sheppard, Fresno, Cal., for plaintiff.

Herbert E. Bartow of Green, Green & Bartow, Madera, Cal., for defendant Cox.

Clifford H. Plumley, Madera, Cal., for defendant Gibson.

JERTBERG, District Judge.

On December 2, 1956, the defendant, William Howard Cox, was the owner of a 1957 Plymouth automobile and the owner of a 1935 Ford pick-up automobile. On that day the plaintiff, an insurance company, organized under the laws of the State of Illinois and authorized to engage in a general insurance business within the State of California, issued to said William Howard Cox, a citizen of the State of California and a resident of the County of Madera, an automobile liability insurance policy number 14631306, under which the plaintiff agreed to pay "for an insured all damages which the insured shall be legally obligated to pay because of:

A. bodily injury sustained by any person, and

B. * * *

"arising out of the ownership, maintenance or use, including loading and unloading, of the owned automobile or a non-owned automobile."

The policy specified the persons insured, including "(1) the named insured with respect to the owned or a non-owned automobile; (2) any resident of the named insured's household with respect to the owned automobile; (3) any other person with respect to the owned automobile, provided the actual use thereof is with the permission of the named insured; (4) any relative with respect to a non-owned private passenger automobile or trailer not regularly furnished for use of such relative; and (5) any other person or organization with respect to any automobile or trailer * * *".

Under definitions, contained in the policy, the "named insured" means the individual named on the supplemental page, and his spouse if a resident of the same household; "owned automobile" means the vehicle described on the Supplement Page and, as defined herein, any replacement automobile, any additional automobile, any temporary substitute automobile, and any trailer owned by the named insured. A "non-owned automobile" means an automobile including a trailer, not owned by the named insured or any relative, other than a temporary substitute automobile."

The policy also defined the terms "replacement automobile", "additional automobile" and "temporary substitute automobile".

The supplement page designated William Howard Cox as the named insured, and the 1957 Plymouth automobile as the "owned vehicle".

The policy contained a heading designated "Exclusions—What this Part of the policy does not cover", with which we need not be concerned.

On page 3 of the policy appears the following paragraph "Compliance with financial responsibility laws. When this policy is certified as proof of financial responsibility for the future under the provisions of any Motor Vehicle Financial Responsibility Law, such insurance as is afforded by this Part I shall comply with the provisions of such law to the extent of the coverage and limits of liability required by such law, but not in excess of the policy limits of liability. The insured agrees to reimburse Allstate for any payment it is required to make by such law, if it would not have had to pay except for the agreement in this paragraph."

On or about January 21, 1957, and while said policy was in full force, a

collision occurred in the County of Madera between the 1935 Ford pick-up automobile belonging to the defendant Cox and being operated by him, and a 1955 Pontiac automobile owned by and being operated by the defendant James Gibson, who is likewise a citizen of the State of California and a resident of the County of Madera.

On or about March 26, 1957 the defendant Gibson instituted an action in the Superior Court of the State of California in and for the County of Madera, against the said defendant Cox arising out of said accident, in which the defendant Gibson seeks judgment against the defendant Cox for bodily injuries alleged to have been sustained as a proximate result of the negligent operation of said 1935 Ford pick-up automobile by the defendant Cox.

On May 16, 1957 the insurance company instituted an action in this Court for a declaratory judgment that the insurance policy did not and does not insure the defendant Cox against liability for bodily injuries arising out of said accident, and that the insurance company is in no manner obligated to defend said action pending in Madera County.

Each defendant filed an answer to the complaint in which was admitted the issuance of the policy of insurance, the occurrence of the accident and the filing of the action in Madera County as hereinbefore stated. The answers denied the existence of a controversy and denied the allegation that the policy of insurance did not cover Cox in the operation of the 1935 Ford pick-up automobile.

Each answer contains three additional defenses which may be summarized as follows: (1) Failure of the complaint to state a claim upon which relief can be granted; (2) that plaintiff is estopped to deny that the insurance policy did not insure the defendant Cox against liability for bodily injuries arising out of the collision based upon allegations that the defendant Cox put the plaintiff to an election to defend or not defend the action pending in Madera County and that plaintiff had elected to defend said action, and (3) that the plaintiff waived its right to disclaim or deny its liability under the policy by furnishing counsel and by causing an answer to be filed on behalf of defendant Cox without reserving any right to disclaim liability.

Each defendant filed in this Court a motion for summary judgment seeking judgment of this Court decreeing that the policy in question did insure the defendant Cox against liability for bodily injuries arising out of the automobile accident.

Hearing on the motions for summary judgment was held on August 19, 1957. The plaintiff was represented by Dudley W. Sheppard of the firm of Hansen, McCormick, Barstow and Sheppard. The defendant Cox was represented by Herbert E. Bartow of Green, Green and Bartow, and the defendant Gibson was represented by Clifford H. Plumley. Following oral argument the motions were ordered submitted.

█ The sole basis of the jurisdiction of this Court over the action is diversity of citizenship, Title 28 U.S.C.A. § 1332, plaintiff being a citizen of the State of Illinois and the defendants being citizens of the State of California. In such case this Court must apply the law of the forum. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188. Insofar as these motions for summary judgment relate to the second and third affirmative defenses set forth in the answers, it is my opinion that there are questions of fact presented by such defenses which can only be resolved after a hearing on the merits of such defenses. If the defendants shall be able to sustain such defenses at the trial of the action, then the defendants will be entitled to judgment, even though under the terms of the policy of insurance or the laws of the State of California, the policy does not insure the defendant Cox against liability for bodily injuries arising out of the automobile collision. If, on the other hand, the policy of insurance and the laws of the State of California extend coverage to the defendant Cox under the facts herein recited, the issues tendered

by the second and third affirmative defenses become unimportant.

The crucial question presented by the motions for summary judgment is whether or not, as a matter of law, the defendants are entitled to judgment in their favor under the admitted allegations contained in plaintiff's complaint.

The precise question has never been passed upon by the reviewing courts of the State of California. The latest and the closest approach to the problem is contained in an opinion rendered by the Supreme Court of the State of California on February 19, 1957, in the case of Wildman v. Government Employees' Insurance Company, 48 Cal.2d 31, 307 P. 2d 359, 360. The insurance policy in that case contained a restrictive endorsement to the effect that the insurance afforded by the policy was restricted to the named insured and members of his immediate family. At the time of the automobile accident giving rise to the litigation, the automobile owned by the insured and described in the policy was being driven by a person other than the insured and other than a member of his immediate family.

The Supreme Court of California held that the endorsement was ambiguous and that such ambiguity had to be resolved against the insurance carrier. The policy was construed as "extending coverage to persons suffering bodily injuries or property damage caused by the vehicle in question when it was being driven by the named insured, or members of his immediate family, and also by someone else driving the vehicle with the consent and permission of the named insured".

After reaching the above conclusion, and by way of obiter, the Court stated that a policy of automobile insurance which excludes liability under the policy when the vehicle covered is being driven other than by the insured, but with the consent and permission of the insured, violates the provisions of Section 415 of the Vehicle Code of the State of California, and that such restriction or exclusion contained in a policy is invalid. In this connection the Court stated, "We are of the opinion that for an insurer to issue a policy of insurance which does not cover an accident which occurs when a person, other than the insured, is driving with the permission and consent of the insured is a violation of the public policy of this state as set forth in sections 402 and 415 of the Vehicle Code."

Further, the Court stated, "Inasmuch as sections 402 and 415 of the Vehicle Code set forth the public policy of this state such laws must be considered a part of every policy of liability insurance even though the policy itself does not specifically make such laws a part thereof. * * * We conclude that the restrictive endorsement hereinbefore set forth and discussed is ambiguous; that the construction thereof urged by defendant insurance carrier would be violative of the sections of the Vehicle Code heretofore discussed; and that said sections were intended by the Legislature to be, and are, a part of every policy of motor vehicle liability insurance issued by an insurance carrier authorized to do business in this state."

Section 402 of the Motor Vehicle Act in its pertinent provisions relating to this case provides, "Every owner of a motor vehicle is liable and responsible for the death of or injury to person or property resulting from negligence in the operation of such motor vehicle, in the business of such owner or otherwise, by any person using or operating the same with the permission, express or implied, of such owner, and the negligence of such person shall be imputed to the owner for all purposes of civil damages."

The pertinent provisions of Section 415 of the Vehicle Code reads as follows: "A 'motor vehicle liability policy,' as used in this code means a policy of liability insurance issued by an insurance carrier authorized to transact such business in this State to or for the benefit of the person named therein as assured, which policy shall meet the following requirements:

"(1) Such policy shall designate by explicit description or by appropriate reference all motor vehicles with respect

to which coverage is thereby intended to be granted.

"(2) Such policy shall insure the person named therein and any other person using or responsible for the use of said motor vehicle or motor vehicles with the express or implied permission of said assured.

"(3) Such policy shall insure every said person on account of the maintenance, use or operation of every motor vehicle therein covered within the continental limits of the United States against loss from the liability imposed by law arising from such maintenance, use or operation to the extent and aggregate amount, exclusive of interest and costs, with respect to each such motor vehicle, or five thousand dollars ($5,000) for bodily injury to or death of each person as a result of any one accident and, subject to said limit as to one person, the amount of ten thousand dollars ($10,000) for bodily injuries to or death of all persons as a result of any one accident and the amount of one thousand dollars ($1,000) for damage to property of others as a result of any one accident.

"(b) *Coverage.* Such policy shall (1) Cover the assured in the use or operation of all vehicles owned by him or registered in his name but not insuring such person when operating any motor vehicle not owned by him, or

"(2) Cover the assured in the use or operation of all vehicles owned by him or registered in his name and insure such person in the operation of any motor vehicle not owned or registered in his name, or

"(3) Cover the assured only in the operation of any motor vehicle not owned by him nor registered in his name, or

"(4) Cover the assured only in the operation of a certain vehicle or vehicles not owned by him nor registered in his name. * * *".

It is to be noted that the subsections under subdivision "b" are in the alternative. The facts of the Wildman case come under the provisions contained in subdivision "a" (1), (2) and (3) of Section 415.

It is the contention of the defendants that the instant case comes under the provisions of subdivision "b" (1) or (2). The defendants argue that since the defendant Cox was the owner of both the 1957 Plymouth automobile and the 1935 Ford pick-up at the time of the issuance of the policy that both vehicles are covered under the policy by virtue of subdivision "b" (1) or (2) and the quoted language of the Wildman decision, even though the policy specifies and describes only the 1957 Plymouth automobile. To further support their contention, defendants call attention to the quoted paragraph of the policy appearing on page 3 of the policy under the heading "Compliance with financial responsibility laws".

The case of Northwest Casualty Co. v. Legg, 91 Cal.App.2d 19, at page 25, 204 P.2d 106, at page 109, states: " * * * we think (b) (2) must be read in connection with (a) (1), which provides that such a policy shall designate the motor vehicles with respect to which coverage is intended to be granted. The word 'any' is often used to mean one or more, and does not necessarily mean 'all'. As used in (b) (2), it seems to have been intended to mean any one or more vehicles which are designated in the policy, as required by (a) (1), to which coverage was intended to be granted. Any other interpretation of (b) (2) would seem unreasonable when section 415 is viewed as a whole, and especially in the light of long continued common usage and experience."

Subsection (a) of Section 415 states that a policy of liability insurance issued by an insurance carrier authorized to transact business in this State shall designate by explicit description or by appropriate reference all motor vehicles with respect to which coverage is thereby intended to be granted.

Subdivision (b) of said section dealing with coverage states that such policy, which means the policy described in subdivision (a) and which means a policy that describes by explicit description or

by appropriate reference all motor vehicles to which coverage is thereby intended to be granted, shall cover the assured in the use or operation of all vehicles owned by him.

■ In my opinion, the context requires that subdivision (b) (1) or (2) be construed to mean *all vehicles owned by him and designated by explicit description or by appropriate reference,* as required by subdivision (a). To hold otherwise would mean that an entirely new contract, never agreed to by the insurance company or the insured, would be created.

The policy in question covered the assured "with respect to all damages which he shall be legally obligated to pay arising out of the ownership, maintenance or use, including loading and unloading, of the owned automobile [the 1957 Plymouth] or a non-owned automobile." There is no question that the insurance policy fully met the requirements of subdivision (a) of Section 415, and in my view of the proper construction of subdivision (b), it fully met the requirements of subdivision (b) (2).

The Wildman case dealt only with subdivision (a) and there was no occasion for the Court to construe or pass upon subdivision (b). The broad language of the Court to the effect that Section 415 of the Vehicle Code is a part of every policy of motor vehicle liability insurance issued by an insurance carrier authorized to do business in this State must be considered in the light of the facts of that case and not interpreted to extend coverage under a different state of facts involving the construction of a portion of Section 415 of the Vehicle Code which the Court up to the present time has never construed.

■ Were it not for special defenses 2 and 3 appearing in the answers, and for the provision in the policy extending coverage to a "temporary substitute automobile", I would be forced, as a matter of law, to hold that the insurance policy in question did not insure Cox while driving the 1935 Ford pick-up automobile.

However, evidence may be offered at the trial showing or tending to show that the 1935 Ford pick-up was a "temporary substitute automobile" as defined in the policy. In such event, the policy would extend coverage to such Ford pick-up. This involves questions of fact which can only be resolved at a trial on the merits.

For the reasons herein set forth, the motion of each defendant for a summary judgment is denied, and the cause will be placed on the calendar to be called September 9, 1957 at 10:00 o'clock a. m. for the purpose of setting the same for trial.

The Clerk of this Court is directed to forthwith mail copies of this order to all counsel.