[Civ. No. 2872. Fourth Dist. Jan. 11, 1943.]

PACIFIC AUTOMOBILE INSURANCE COMPANY (a Corporation), Plaintiff and Appellant, v. BESSIE LEWIS et al., Respondents; THE MERCER CASUALTY COMPANY (a Corporation), Defendant and Appellant.

Higgs, Fletcher & Glen for Plaintiff and Appellant.

John W. Holler for Defendant and Appellant.

Luce, Forward, Lee & Kunzel, Erlich & Alpert, H. P. Erlich, Arnold D. Alpert, Simon L. Rose and Z. B. West for Respondents.

BARNARD, P. J.—This is an action for declaratory relief for the purpose of interpreting certain insurance contracts and determining which policies covered the defendants in a previous personal injury action. The court found that the automobile in question was not furnished to the respondent H. E. Wells for his regular use within the meaning of clauses in policies issued by The Mercer Casualty Company and Pacific Automobile Insurance Company, respectively, and held that these policies afforded coverage to Wells for the liability in question and that such liability was to be borne proportionately by these two companies, both of which have appealed from the judgment.

H. E. Wells was a joint owner of a Ford automobile which was insured by the appellant Pacific Automobile Insurance Company. His wife and his mother-in-law owned an Oldsmobile car which was insured by the appellant The Mercer Casualty Company. Although the accident in question happened while Wells was driving another automobile belonging to his employers it is conceded that he was covered by these two policies of insurance unless he came within one of the exceptions to the "drive other cars" provision included in each of these policies, which exceptions provided that such coverage (a) should not apply while he was driving another

automobile "furnished for regular use to the named insured," and (b) should not apply to any employee of a "sales agency . . . with respect to any accident arising out of the operation thereof."

The facts are undisputed and may be briefly summarized. Wells was one of six or seven new car salesmen employed by Smith and Haight, who operated an automobile sales agency in San Diego. He and two other salesmen did not own demonstrators while the other salesmen did. Smith and Haight furnished two cars for the use of salesmen which were called "house demonstrators" and while these were primarily for the use of salesmen who did not own demonstrators, they were at times used by all of the salesmen. Three other cars which were set aside for the use of the owners and the sales manager were also available at times for demonstration purposes. Wells used all of these cars at times and sometimes borrowed the demonstrators owned by the other salesmen, but usually used one of the two house demonstrators. His use of a particular car was subject to that car having been previously spoken for by another salesman. It was not uncommon for him to use one of his employer's cars, including the demonstrators, for his personal use during the daytime and some half dozen nights a month, when he worked late, he would take one of the demonstrators home with him. On some occasions when he had a demonstrator at home he would later take it out for his personal use. He testified, however, that prior to the trip here in question he had never taken an automobile belonging to his employers away from the vicinity of San Diego. There is testimony on the part of Wells' employers that while they did not encourage the personal use of cars by their salesmen they permitted this practice to a certain extent because this privilege tended to keep them happy and make better salesmen of them.

Shortly before the accident in question one of the employers, Mr. Smith, sold his personal car and took one of the house demonstrators for his personal use. Thereafter, he brought this car back to the sales agency every day where it was used by Wells as a demonstrator, although he could not drive it home at night. A few days before May 11, 1941, Wells asked the sales manager if he might have the use of an automobile to drive to Pomona on a personal matter on May 11. He was told that it could not then be determined whether a car would be available at that time. On the eve-

ning of May 10, he repeated this request and was advised that Mr. Smith had returned the house demonstrator he was using and that he might take that car. As Wells was driving the car to Pomona the next day for the purpose of making a personal visit the accident occurred which gave rise to this litigation.

The appellants contend that it conclusively appears from the evidence that the house demonstrator in question was "furnished for regular use" to Wells by his employers and that it follows that Wells was not covered by the policies issued by them, respectively. It is argued that the "regular use" referred to in the policies need not be an exclusive use, that the fact that Wells used different cars belonging to his employers at different times is immaterial, that the fact that he used the car in question very frequently constituted the use thereof a "regular use" within the meaning of the policies, that the fact that he sometimes used the car for his personal affairs as well as for business further indicates that the car was "furnished for regular use" to him by his employers, and that to hold that this car was not furnished to him for his regular use, within the meaning of the policies, is to misconstrue the plain meaning of the contracts.

It is unnecessary to hold that the words "regular use" as used in these policies referred to an exclusive use. But "regular use" reasonably suggests a principal use, as distinguished from a casual or incidental use. (*Kindred* v. *Pacific Auto. Ins. Co.*, 10 Cal.2d 463 [75 P.2d 69].) Assuming that the use of such a car may be regular without being exclusive, there are other elements which may be considered in determining the meaning intended by the rather broad and not very explicit language used in these policies to set forth the exception to the coverage otherwise provided. Whether an automobile is furnished by another to an insured for his regular use may reasonably depend upon the time, place and purpose for which it is to be used. One furnished for all purposes and at all times and places would clearly be for his regular use. One furnished at all times but strictly for business purposes alone could hardly be said to have been furnished for his regular use at a time and place when it was being used for personal purposes. It may be assumed that when a car is furnished all of the time for business purposes, with permission to use the same for incidental personal purposes, all within a certain area, the car might be

said to be furnished for regular use within that area. But when a car thus furnished for such a use is driven to a distant point on one occasion, with the special permission of the one furnishing the car, that particular use would hardly seem to be a "regular use" of the car. It cannot be said, as a matter of law, that such a use on a particular occasion, which is a departure from the customary use for which the car is furnished, is a regular use within the meaning of these clauses of the policies. A question of fact is presented which calls for an interpretation of the language of the policies relating to the facts involved. That language may be reasonably interpreted as intending to provide for a regular use at the time and place in question, and not for such an exceptional and single use by special permission as here appears. ■ The court having adopted this construction, and this being a reasonable one, it cannot be overthrown even if it should appear that another construction would have been equally tenable. (*Narver* v. *California State Life Ins. Co.,* 211 Cal. 176 [294 P. 393].)

■ Moreover, if we assume that these clauses might otherwise be interpreted the one placed upon them by the court appears the more reasonable under the circumstances which here appear. While Wells' use of this car, among others, during the daytime and occasionally at night, mainly for business but occasionally for his personal ends, may be said to have been more or less a "regular use," that use had always been confined to the area where his work was done. Any such personal use was admittedly allowed for the purpose of furthering his work as a salesman in that area. But such use, regular or otherwise, did not contemplate or include his use of the car for trips to distant points on personal visits. The fact that he had never before used either this car or any other car belonging to his employers for a personal trip away from the vicinity of San Diego, indicates that such a foreign trip was not within any regular use for which the car was furnished to him. The further fact that on this occasion he asked for and received special permission to use his car for this trip strongly indicates that the same was one which was outside of and apart from any possible regular use for which the car was furnished to him. Otherwise, he would have had no occasion to ask his employers for permission to use a car on this trip. The most reasonable view of the situation is that, whatever may be said of other times

and places, this car was not furnished for his regular use, insofar as this particular trip is concerned, and that at the time and place in question the first exception provided by the clauses of the policy which are here in controversy was not applicable. In our opinion, the court's finding and conclusion that at the time of this accident this automobile was not one which had been furnished to him by his employers for his regular use, within the meaning of the policies, must be sustained.

The appellants further contend that Wells also came within the other exception relating to an employee of a "sales agency." It is argued that since the employees of this sales agency were allowed at times to use its cars for their personal purposes, with the idea of keeping them happy and making them better salesmen, this was a part of their compensation. And that, therefore, it must be held that this accident was one directly "arising out of the operation" of this sales agency. The very wording of the clauses of the policies relating to an employee of a sales agency indicates an intention to distinguish between the operation of such a car on the personal business of the employee and its operation in connection with the business of the agency. While Wells may have been allowed to use this car on this occasion because he was an employee of the agency, such use was an incidental and casual one, outside of the usual and customary practice in the business, and the accident arose out of the manner in which he was then conducting his personal business. Any possible connection between this accident and the business of the agency is remote, and it cannot be fairly said that it was one arising out of the operation of that agency, within the contemplation and intention of the policies.

The judgment is affirmed.

Marks, J., and Griffin, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 11, 1943.