[Civ. No. 1031. Fifth Dist. June 9, 1970.]

TRUCK INSURANCE EXCHANGE et al., Plaintiffs and Respondents, v. WILSHIRE INSURANCE COMPANY et al., Defendants and Appellants.

554

**COUNSEL**

Chinello, Chinello & Maddy, John D. Chinello, Magana, Olney, Levy & Cathcart and Richard Deverian for Defendants and Appellants.

Stammer, McKnight, Barnum, Bailey & Barnett and James K. Barnum for Plaintiffs and Respondents.

**OPINION**

**GARGANO, J.**—Plaintiffs, Arnold Wiebe, doing business as Arnold Wiebe Buick, and Truck Insurance Exchange, hereafter referred to as Exchange, brought this action in the court below to reform an insurance policy and for declaratory relief. They named Charlotte Preston, the heirs of George T. Dudney, hereafter referred to as the Dudneys, and the Wilshire Insurance Company, hereafter referred to as Wilshire, as defendants. After court trial the court ordered the policy reformed as prayed for in the complaint and declared that defendant Charlotte Preston was not covered by the Exchange

policy as to her automobile accident with George T. Dudney; however, the court declared that she was covered by the Wilshire policy. All defendants have appealed. They present three main contentions for reversal: that the court's judgment reforming the policy is contrary to public policy; that the exclusion (endorsement ET-279) which the court ordered attached to the policy is violative of Insurance Code section 11580.1 and is void; and that the evidence is insufficient to support the judgment.

The facts are these: In July 1965, Charlotte Preston transferred her interest in a 1964 Buick Electra to her husband, pursuant to a property settlement agreement. Then she went to Arnold Wiebe Buick to purchase a used automobile and was given a Rambler to try out to see if it met her needs. Some two or three weeks later Mrs. Preston telephoned Mr. Wiebe and informed him that she had decided to purchase the Rambler. However, before any documents were signed, she was involved in an automobile accident with George T. Dudney. Mr. Dudney died two days later as the result of injuries sustained from the accident.

At the time of her automobile accident with Mr. Dudney Charlotte Preston was the named insured in a policy issued by Wilshire with limits of $10,000/$20,000. The policy named the 1964 Buick Electra, which Mrs. Preston transferred to her husband, as the assured automobile but also covered any other automobile not owned by the named insured or furnished for her regular use. At the same time, Arnold Wiebe Buick was the named insured in an automobile liability policy issued by Exchange with limits of $250,000/$500,000. This policy had been negotiated several months earlier by Arnold Wiebe and Duncan Earl Prince. Mr. Prince is district manager of Farmers Insurance Group, and Exchange is a member of this group.

During the course of the negotiations Wiebe told Prince that he wanted a form of limited liability in the policy for loaner cars, because he wanted the customer's policy to apply in such cases. He was informed that the policy could include such a provision and that Arnold Wiebe Buick would receive a premium discount for it. Subsequently, Mr. William Piacentini, multiline underwriter for Exchange, prepared a quotation showing coverage and premium, and containing "limited loaner car coverage" together with a premium discount of 5 percent. The quotation was shown to Mr. Wiebe, who then signed an application for the policy; the application also incorporated the coverage and discount shown on the quotation. Afterward, Piacentini prepared a policy order specifying that endorsement ET-279 was to be attached. Under this endorsement the permissive users of Arnold Wiebe Buick's automobiles, other than its directors, stockholders, agents or employees, were covered under the policy "only if no other valid and collectible automobile liability insurance, either primary or excess, with limits of liabil-

ity at least equal to the minimum limits specified by the financial responsibility law of the state in which the automobile is principally garaged, is available to such person." By mistake the endorsement was not physically incorporated or attached to the policy; instead, another endorsement, which also recited "limited loan car coverage" and a billing form which gave a five percent discount, were attached. These documents were seen by Prince and Wiebe when they received the policy and reviewed it.

Following the death of George T. Dudney, his heirs brought a wrongful death action against Mrs. Preston and Arnold Wiebe Buick. It was then discovered that endorsement ET-279 had been omitted from Exchange's policy. This action for reformation and declaratory relief followed.

Appellants do not deny that under subdivision (f) of section 11580.1 of the Insurance Code an insurance carrier may limit its exposure as to the permissive users of the named insured's vehicles if the named insured is engaged in the business of selling, repairing and servicing automobiles. Subdivision (f) provides: "Where two or more policies are applicable to the same loss and one of such policies affords coverage to a named insured engaged in selling, repairing, servicing, delivering, testing, road testing, parking, or storing automobiles, such policies may contain a provision that the insurance coverage applicable to such motor vehicles afforded a person other than the named insured or his agent or employee shall not be applicable if there is any other valid and collectible insurance applicable to the same loss covering such person as a named insured or as an agent or employee of a named insured under a policy with limits at least equal to the financial responsibility requirements specified in Section 16059 of the Vehicle Code; and in such event, the two or more policies shall not be construed as providing cumulative or concurrent coverage and only that policy which covers the liability of such person as a named insured, or as an agent or employee of a named insured, shall apply. In the event there is no such other valid and collectible insurance, the coverage afforded a person other than the named insured, his agent or employee, may be limited to the financial responsibility requirements specified in Section 16059 of the Vehicle Code."

Appellants' contention that the court could not reform the Exchange policy is founded on the proposition that the strong public policy underlying the omnibus clause of section 11580.1, as articulated in *Wildman* v. *Government Emp. Ins. Co.*, 48 Cal.2d 31 [307 P.2d 359] and *Abbott* v. *Interinsurance Exchange*, 260 Cal.App.2d 528 [67 Cal.Rptr. 220], prohibits the reformation of an automobile liability insurance policy after an accident has occurred in order to limit coverage as to the permissive users of the named insured's vehicles. In short, they argue that if an action for reformation is brought after an accident has occurred, the innocent third party who was injured by the permissive user of a vehicle, and whom the

overall basic public policy of this state is geared to protect, has no way of refuting collusive testimony.

There is no merit to this contention. ■ It is fundamental that a written contract may be reformed by a court of equity where, due to mutual mistake on the part of the parties, it fails to express their true intentions (*Lemoge Electric* v. *County of San Mateo,* 46 Cal.2d 659, 663 [297 P.2d 638]; *Renshaw* v. *Happy Valley Water Co.,* 114 Cal.App.2d 521 [250 P.2d 612]; Civ. Code, § 3399). ■ Moreover, it is settled that an insurance policy may be reformed to limit or exclude coverage if such was the intention of the parties, even where the rights of third party claimants who are not parties to the insurance contract are adversely affected (*Utica Mut. Ins. Co.* v. *Monarch Ins. Co.,* 250 Cal.App.2d 538 [58 Cal.Rptr. 639]).

■ Thus, while it is true that section 11580.1 provides that no liability insurance policy shall be "issued or delivered" unless it contains coverage for the permissive users of the named insured's vehicles, there is nothing in the language of this section which changes the statutory or decisional law on the right of reformation, where the limited coverage permitted by subdivision (f) was agreed upon by the contracting parties when the policy was negotiated but was inadvertently omitted when the policy was issued and delivered.

■ The Dudneys also maintain that because Prince and Wiebe failed to detect the mistake in the policy until after Charlotte Preston's accident, they were negligent and the court should have denied reformation for this reason. The trial court determined that respondents offered a "satisfactory explanation" for the omission, and in view of the legally sufficient evidence presented on this issue we are bound by the court's determination (*Taff* v. *Atlas Assur. Co.,* 58 Cal.App.2d 696 [137 P.2d 483]). The accident occurred less than two months after the policy was issued; Prince and Wiebe both testified that they went over the policy together and discussed its essential provisions; Wiebe testified that he was satisfied that the limited loaner coverage was in the policy because it contained an endorsement reciting "limited loaner coverage 5%" and because the attached billing gave him a 5 percent discount.

■ We agree with appellants' next contention that the exclusion of permissive users of the insured's vehicles, as set forth in endorsement ET-279, is broader than that permitted by subdivision (f) of section 11580.1. The endorsement excludes all accidents as to which the permissive user has "other valid and collectible automobile liability insurance" whether he is the named insured in the policy or not. But, subdivision (f), apparently to forestall innumerable disputes as to whether a permissive user is in fact covered by other insurance, refers only to accidents for

which the permissive user is covered by other valid and collectible insurance "as the named insured or as the agent or employee of a named insured." (*Mid-Century Ins. Co.* v. *Hernandez,* 275 Cal.App.2d 839 [80 Cal.Rptr. 448].) Furthermore, under the subdivision the permissive users' insurance coverage must be "at least equal to the financial responsibility requirements specified in section 16059 of the Vehicle Code," whereas the endorsement refers to a policy "with limits of liability at least equal to the minimum limits specified by the financial responsibility law of the state in which the automobile is principally garaged."

Nevertheless, we do not agree that this overbroadness renders the endorsement totally void as appellants maintain. Presumably, Exchange intended its endorsement to conform to the insurance laws of this state. In addition, it gave Arnold Wiebe Buick a substantial discount in order to limit its exposure under the policy. Thus, to categorically declare that the exclusion is totally void places too high a premium on language and sets a precedent which could unduly penalize insurance companies which act in good faith.[1] We hold that endorsement ET-279 is merely ineffective insofar as it exceeds the permissible limits of subdivision (f). And, because at the time of her accident with George T. Dudney appellant Charlotte Preston was the named insured in the Wilshire policy, a valid and collectible insurance policy with limits equal to the financial responsibility requirements of Vehicle Code section 16059, the broad language of the challenged endorsement is not critical in this case.

We next turn to appellants' contention that respondents did not prove that they were entitled to reformation by "clear and convincing" evidence.

Albeit it is true that a person who seeks reformation must present "clear and convincing evidence," the test on appeal is whether there is any substantial evidence to support the judgment (*National Auto. & Cas. Ins. Co.* v. *Industrial Acc. Com.,* 34 Cal.2d 20 [206 P.2d 841]). Respondents' evidence meets this test. Arnold Wiebe testified that he told Duncan Earl Prince that he could not afford to cover everybody who borrowed a loaner car and that he wanted the customer's policy to apply in such cases. He also testified that Prince told him that the policy would contain a provision for limited coverage and that he would receive a premium discount for it. Subsequently, William Piacentini, multiline underwriter for Exchange, prepared a proposal which, on its face, contained "limited loaner car coverage," together with a premium discount. This proposal was shown to Mr. Wiebe before he signed an application for the policy. The application also

---

[1]Supposedly, insurance companies doing business in several states attempt to conform the language of their policies and standard exclusions to the laws of more than one state.

incorporated the limited coverage and the premium discount. Then Mr. Piacentini prepared an order for the issuance of the policy, specifying that endorsement ET-279 was to be attached; but, by mistake, another endorsement was attached to the policy with a billing form indicating that a 5 percent discount had been allowed.

Appellants argue that there is no evidence of mutual mistake, because Mr. Prince did not understand the nature of the company's standard limited loaner car endorsement and had misinterpreted it to Arnold Wiebe who also did not know the nature of this endorsement. They assert that while endorsement ET-279 does not provide excess coverage for permittees using automobiles owned by Arnold Wiebe Buick, on cross-examination Prince testified that he told Arnold Wiebe that Wiebe's policy would be excess over other collectible insurance covering the driver of the vehicle. Prince also said that he told Wiebe that under the limitation Wiebe "would be protected over and above someone else's insurance."

We are not persuaded by appellants' arguments. When Prince's references to excess coverage are examined in light of his entire testimony, they readily allow for the inference that he was not telling Arnold Wiebe that the endorsement provided excess coverage up to the full limits of the policy for permissive users, but, rather, was assuring Wiebe that the policy would protect Arnold Wiebe Buick for any amount in excess of the limits of the customer's policy for which it might be found liable as the owner of the vehicle. In addition, when Prince discussed the proposed insurance coverage with Piacentini, the latter indicated that Exchange wished to include its standard limited loaner car endorsement on the policy. Then, Piacentini prepared the quotation which was shown to Wiebe with this endorsement in mind.

Appellants also argue that the evidence proves that the Rambler automobile was furnished by Arnold Wiebe Buick to Charlotte Preston for her regular use, and hence that the Wilshire policy was inapplicable to her accident with George T. Dudney. However, Arnold Wiebe testified that he loaned the Rambler automobile to Charlotte Preston so that she could try it out to determine if she wanted to purchase it. Consequently, the court could reasonably infer by its very nature that the use was for a limited period of time, restricted to a reasonable geographical area, and for a limited purpose. And, although Mrs. Preston used the car for several weeks, this fact alone does not change the nature of the use as a matter of law. As the court stated in *Pacific Auto. Ins. Co.* v. *Lewis,* 56 Cal.App.2d 597, 600 [132 P.2d 846]: "Whether an automobile is furnished by another to an insured for his regular use may reasonably depend upon the time, place and purpose for which it is to be used. One furnished for all purposes

and at all times and places would clearly be for his regular use. One furnished at all times but strictly for business purposes alone could hardly be said to have been furnished for his regular use at a time and place when it was being used for personal purposes."[2]

■ The Dudneys' final thrust is that the term "loaner car" as used by Prince and Wiebe during their negotiations meant a car which was loaned to a person whose automobile was in Wiebe's shop for repairs and should have been kept within this narrow definition. Significantly, when the policy was negotiated Arnold Wiebe Buick was not merely engaged in the business of servicing and repairing vehicles; it was also engaged in the business of selling new and used automobiles. Therefore, because Arnold Wiebe told Prince that he did not want "his policy providing insurance for everybody in town that happened to borrow one of his cars," the court could reasonably believe that he was referring to every phase of the company's business. In a few words, the standard endorsement used by Exchange is "reasonably suitable" to Wiebe's business as a car dealer, accomplishes what Mr. Wiebe obviously intended, and is controlling (*National Emblem Ins. Co.* v. *Rios,* 275 Cal.App.2d 70 [79 Cal.Rptr. 583]).

The judgment is affirmed.

Stone, P. J., concurred.

The petition of appellants Wilshire Insurance Co. and Preston for a hearing by the Supreme Court was denied August 5, 1970.

---

[2]In *Comunale* v. *Traders & General Ins. Co.,* 116 Cal.App.2d 198 [253 P.2d 495, 68 A.L.R.2d 883], the insured regularly used his brother's truck to drive to and from work but had never used it for any other purpose except on the night of the accident, when he was enroute to visit his aunt. The appellate court held that he was covered by his insurance policy, notwithstanding the "regular use" exception contained in the policy. (See also *Safeco Ins. Co.* v. *Thomas,* 244 Cal.App.2d 204 [52 Cal.Rptr. 910].)