[Civ. No. 54006. Second Dist., Div. Five. Apr. 20, 1979.]

HIGHLANDS INSURANCE COMPANY, Plaintiff and Respondent, v.
UNIVERSAL UNDERWRITERS INSURANCE COMPANY,
Defendant and Appellant.

172

**COUNSEL**

Fernandes & Le Berthon and Edward L. Le Berthon for Defendant and Appellant.

Vletas & Greer and Barry E. Shanley for Plaintiff and Respondent.

**OPINION**

**STEPHENS, J.**—Defendant, Universal Underwriters Insurance Company, appeals from an adverse declaratory judgment. Although the facts are not substantially in dispute, defendant contends that the trial court erred both in its interpretation of an automobile insurance policy issued by plaintiff, Highlands Insurance Company, and in its finding of sufficient evidence to sustain a judgment in favor of plaintiff. We disagree, and affirm the judgment of the trial court, for the reasons set forth below.

Plaintiff was the insurer for Robert H. Cleveland. Cleveland was involved in an accident while driving a 1971 Cadillac owned by Modern

Motors but in his custody for purposes of a potential sale to him. Defendant was the insurer for Modern Motors. At the time of the accident, Cleveland had been driving the Cadillac about six weeks. He had orally agreed with the son of the owner of Modern Motors, Paul Speights, to buy the car for $5,600; Speights was also going to arrange financing. As Cleveland stated in his deposition, which was admitted into evidence in its entirety, the only reason he had not yet actually bought the car was that they were waiting for special tires he had ordered to come in. No limitation of any kind had been placed on Cleveland's use of the car. Cleveland had two other vehicles at the time, a Datsun and a GMC pickup truck, which were described in his insurance policy with plaintiff. After the accident, plaintiff denied liability on the Cadillac but paid $15,000 in settlement to the other driver solely to avoid a bad faith claim. Plaintiff then brought its successful action for declaratory judgment; the court concluded that plaintiff's insurance policy did not afford coverage for the Cadillac driven by its insured, Cleveland, and that defendant's insurance policy covering Modern Motors was the insurer for the collision.

■ At issue is the meaning of an exclusionary clause in plaintiff's automobile insurance policy. The policy covered described automobiles owned by Cleveland and nonowned automobiles defined as follows: " 'Non-owned automobile' means an automobile or trailer not owned by or furnished for the regular use of either the named insured or any relative, other than a temporary substitute automobile."[1] Defendant contests the trial court's finding of fact that the Cadillac was furnished for Cleveland's regular use, arguing first that "regular use" in plaintiff's exception from coverage is vague, undefined and ambiguous, and secondly that the evidence did not establish regular use. As a result defendant maintains, the court below erroneously concluded that plaintiff's insurance policy did not afford coverage on the Cadillac.

However, a common sense reading of the quoted provision in the policy makes it apparent that plaintiff's insurance covered a car owned by Cleveland or used as a temporary substitute for a car owned by him. If a car was *not* owned by him and was *not* being used as a temporary substitute vehicle but instead was furnished to him for his *regular use,* it was excluded from coverage under plaintiff's policy. ■ Absent a

---

[1] A "temporary substitute automobile" is defined in the policy, but "regular use" is not. The parties do not dispute the trial court's finding that the Cadillac was not a temporary substitute automobile.

clear indication to the contrary, words in an insurance policy are to be read in their plain and ordinary sense. (*Farmers Ins. Exch.* v. *Harmon* (1974) 42 Cal.App.3d 805, 809 [117 Cal.Rptr. 117].) Ambiguity cannot be based on a strained instead of reasonable interpretation of a policy's terms. (*California State Auto. Assn. Inter-Ins. Bureau* v. *Hoffman* (1978) 77 Cal.App.3d 768, 775 [143 Cal.Rptr. 835].) ■ Here, the trial court could properly find, as it did, that the Cadillac was not owned by him, was not a temporary substitute automobile, and was furnished for his regular use; these findings are supported by substantial evidence.

■ We reject the contention that the term "regular use" is vague, undefined and ambiguous.[2] On the contrary, a review of the seven California cases which have ruled on regular use shows that our courts have not hesitated to define and apply the concept.[3] More than 40 years ago, the Supreme Court found that regular use "means principal use, as distinguished from a casual or incidental use . . . ." (*Kindred* v. *Pacific Auto Ins. Co.* (1938) 10 Cal.2d 463, 465 [75 P.2d 69].) Elements to be considered in making the determination whether or not a car was furnished for regular use were clearly articulated in *Pacific Auto Ins. Co.* v. *Lewis* (1943) 56 Cal.App.2d 597, 600-601 [132 Cal.Rptr. 846]. These elements include time, place and manner of use, purpose or type of use, and restrictions on use. Primarily, the issue presents a question of fact

---

[2]Defendant in its research doubtless discovered the jurisdictional split as to whether this sort of exclusionary clause, also known as a "drive other cars" provision, is ambiguous or not. (See Annot. (1962) 86 A.L.R.2d 937, 943-944; 13 Couch on Insurance (2d ed. 1965) § 45:1051.) Although California is among those states which have found a part of the clause unclear, a closer look at our cases reveals that *other words* in the provision, and not "regular use," have been ruled uncertain. (*Island* v. *Fireman's Fund Indemnity Co.* (1947) 30 Cal.2d 541 [184 P.2d 153, 173 A.L.R. 896] ["member of household"]; *Comunale* v. *Traders & General Ins. Co.* (1953) 116 Cal.App.2d 198 [253 P.2d 495] ["household"]; *Juzefski* v. *Western Cas. & Surety Co.* (1959) 173 Cal.App.2d 118 [342 P.2d 928] ["household"]. Moreover, recent cases have refuted a claim of ambiguity as to the "member of household" portion of the "drive other cars" provision where its definition can be ascertained. (*California State Auto. Assn. Inter-Ins. Bureau* v. *Hoffman, supra,* 77 Cal.App.3d 768, 775; *Allstate Ins. Co.* v. *Smith* (1970) 9 Cal.App.3d 898 [88 Cal.Rptr. 593]; *Northwestern National Casualty Co.* v. *Davis* (1979) 90 Cal.App.3d 782 [153 Cal.Rptr. 556].)

[3]These cases, in chronological order, are: *Kindred* v. *Pacific Auto. Ins. Co.* (1938) 10 Cal.2d 463 [75 P.2d 69] [regular use], *Pacific Auto Ins. Co.* v. *Lewis* (1943) 56 Cal.App.2d 597 [132 Cal.Rptr. 846] [no regular use], *Northwest Casualty Co.* v. *Legg* (1949) 91 Cal.App.2d 19 [204 P.2d 106] [regular use], *Comunale* v. *Traders & General Ins. Co., supra,* 116 Cal.App.2d 198 [no regular use], *Juzefski* v. *Western Cas. & Surety Co., supra,* 173 Cal.App.2d 118 [no regular use], *Safeco Ins. Co.* v. *Thomas* (1966) 244 Cal.App.2d 204 [52 Cal.Rptr. 910] [no regular use], and *Truck Ins. Exch.* v. *Wilshire Ins. Co.* (1970) 8 Cal.App.3d 553 [87 Cal.Rptr. 604] [no regular use]. (See also Annot. (1962) 86 A.L.R.2d 937 and Later Case Service; 13 Couch on Insurance (2d ed. 1965) § 45:1050-1065.)

which requires an interpretation of the language of the policy to the facts involved. (*Ibid.*) Thus, a finding of no regular use would be supported by the facts where the car was used infrequently (*Comunale v. Traders & General Ins. Co., supra,* 116 Cal.App.2d 198) or occasionally with the permission of a parent (*Juzefski v. Western Cas. & Surety Co., supra,* 173 Cal.App.2d 118) or during the personal use of a car furnished mainly for business purposes (*Safeco Ins. Co. v. Thomas, supra,* 244 Cal.App.2d 204; *Comunale v. Traders & General Ins. Co., supra*; *Pacific Auto Ins. Co. v. Lewis, supra*). On the other hand, a finding of regular use has been upheld where a trucker continuously drove outside the 50-mile radius set forth in his insurance policy (*Kindred v. Pacific Auto Ins. Co., supra,* 10 Cal.2d 463) and where a woman had used her mother's car as her own for over a year, but had failed to change its registration (*Northwest Casualty Co. v. Legg, supra,* 91 Cal.App.2d 19.)

In the latest case, on facts similar to those before us, the court found no regular use where a woman had been test-driving a car on loan from the dealer for several weeks before deciding to buy it. (*Truck Ins. Exch. v. Wilshire Ins. Co., supra,* 8 Cal.App.3d 553.) There, however, the court emphasized that the trial court "could reasonably infer . . . that the use was for a limited period of time, restricted to a reasonable geographical area, and for a limited purpose." (*Id.,* at p. 561.) This is readily distinguishable from the case before us, where the evidence revealed expressly that no limitations of any kind had been placed on Cleveland's use of the car. The instant case, then, falls under the general rule that a car "furnished for all purposes and at all times and places would clearly be for his regular use." (*Pacific Auto Ins. Co. v. Lewis, supra,* 56 Cal.App.2d 597, 600.)

■ Finally, we note the purpose of the provision itself as a crucial factor in our analysis of this case and in synthesizing the other cases, which almost without exception have affirmed the judgment of the courts below. The clear intent and function of a "drive other cars" provision in an automobile insurance policy is to prevent abuse, by precluding the insured and his family from regularly driving two or more cars for the price of one policy. The purpose of the provision is to cover the occasional use of other cars without payment of an additional premium but to exclude the frequent or habitual use of other cars, which would increase the risk on the insurer without increasing the premium of the insured. (See cases cited in Annot. (1962) 86 A.L.R.2d 937, 940 and 13 Couch on Insurance (2d ed. 1965) § 45:1052.) Thus, the clause excludes

coverage for precisely the situation before us, where a person has unlimited use of a car which he drives in addition to his own for some time without paying an additional premium to his insurer.

The judgment is affirmed.

Kaus, P. J., and Ashby, J., concurred.