Filed 2/8/17

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| JAVIER MEDINA,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>GEICO INDEMNITY COMPANY,<br><br>Defendant and Respondent. | F072548<br><br>(Super. Ct. No. S-1500-CV-281833)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Kern County. Lorna H. Brumfield, Judge.

Law Offices of Young Wooldridge and Thomas A. Brill for Plaintiff and Appellant.

Tharpe & Howell, Charles D. May and Eric B. Kunkel for Defendant and Respondent.

Leigh Anne Flores was involved in an accident while driving a van her employer, Pacific Bell, had furnished to her to perform her duties, but which she used for both business and personal purposes. At the time of the accident, Flores was running a personal errand during her work day. As a result of the accident, Javier Medina, the driver of the car she hit, sued Flores and Pacific Bell for damages. In that action, the trial court found Pacific Bell, who self-insured the van, was not vicariously liable for Flores's

actions as she was not acting in the course and scope of her employment at the time of the accident. Since the parties stipulated Flores was a permissive user of the van, Pacific Bell was liable only for the $15,000 statutory limit. In a subsequent arbitration involving only Medina and Flores, the arbitrator awarded Medina over a half-million dollars in damages.

Flores had insurance for her personal car through GEICO Indemnity Company. The GEICO policy provided coverage for her use of a "non-owned" vehicle, but not if the non-owned vehicle was "furnished for [her] regular use." Flores tendered defense of the underlying action to GEICO, but GEICO refused to defend or indemnify her. Flores assigned any rights she had against GEICO to Medina in exchange for a covenant not to execute against her personal assets. After GEICO refused to pay the judgment Medina obtained based on the arbitrator's award, Medina filed this lawsuit against GEICO for breach of contract, bad faith, and declaratory relief.

GEICO brought a summary judgment motion based, in part, on the ground that there was no coverage under its policy because the van was furnished to Flores for her regular use. The trial court granted the motion, finding as a matter of law there was no coverage under the non-owned auto clause since Flores had nearly unlimited use of the van.

On appeal, Medina argues the van was not furnished for Flores's regular use at the time and place of the accident because it was furnished to her primarily for business use and she was on a personal mission at the time. We conclude that under the circumstances of this case, since Flores was able to use the van for both business and personal purposes, and her personal use of the van at the time of the accident was not a departure from its customary use, the van was furnished to Flores for her regular use and there is no coverage under the GEICO policy. Accordingly, we affirm the judgment.

2.

## FACTUAL AND PROCEDURAL BACKGROUND

Flores worked for Pacific Bell as a facility specialist; at the time of the accident she had been a Pacific Bell employee for 18 years. Flores worked out of a Pacific Bell home office (home office), which was located first in Madera and later in Fresno, and traveled to AT&T and Pacific Bell "central offices" throughout the San Joaquin Valley and into the Mojave Desert, where she inventoried working and non-working equipment. Since Flores's job required her to transport company equipment and tools, and she was not allowed to use her personal vehicle to do so, she was assigned a 2000 GMC Safari (the van), which Pacific Bell owned. Flores had her own set of keys to the van, which was permanently assigned to her for her exclusive, regular use.

When Flores was working in Fresno, she drove her personal car to and from the Fresno home office, where she picked up the van and used it during her work day. When traveling out of town for work, Flores drove her personal car to the Fresno home office on Monday morning, where she switched vehicles, picked up her equipment, loaded the van, and drove to her destination. Once there, she checked into a motel room and went to work. On Friday, she drove back to the Fresno home office, either first thing in the morning or at lunchtime, and picked up her personal vehicle.[1] Flores never took the van home overnight. When she was on out-of-town assignments, she always returned to the home office at the end of the week; it never occurred to her to keep the van over the weekend in whatever city she was working in, as she never stayed over the weekend.

---

[1] When Flores first became a facility specialist, her then supervisor, Steve Baker, told her not to use her personal car to drive to other locations to perform her job. Instead, she was to drive her personal vehicle to Madera or Fresno, where she would begin the day. From there, she used the van in the parking lot to travel to the central office where she was working, whether Fresno, Bakersfield or Madera. At the end of her shift, she returned, put the van in the parking lot and drove her vehicle home. According to Chad Greek, who was Flores's immediate supervisor on the day of the accident, when employees returned from overnight out-of-town assignments, they returned their company vehicles to their home base because "[t]hat's where they end their shift."

3.

Pacific Bell did not place any restrictions on Flores's use of the van during the work day. Flores's supervisor, Greek, did not specifically discuss any limitations regarding the van's use when he initially obtained it for Flores, including its use while on out-of-town work assignments. When she worked in Fresno, Flores used the van to drive home for lunch and to run errands, such as to the bank and shopping. No one told her she had to use her personal car if she wanted to go home for lunch, or that she was not allowed to use the van to go to the bank or shopping; she also was not told there was a limit on how far from the home office she could travel in the van. She always used the van for personal errands if she was working in Fresno, and was never told she could not do so. Greek knew she used the van for personal purposes.

With respect to out-of-town assignments requiring an overnight stay, Pacific Bell imposed no restrictions on her use of the van outside of work hours. When Flores was stationed in Bakersfield, Pacific Bell authorized her to use the van for personal errands to destinations away from Bakersfield. No one from Pacific Bell told Flores she could use the van to only go from the hotel to the office, or that she could not use the van to go to a movie, restaurant or bar. Flores understood there were no limitations on where she could take the van during her non-working hours while on an overnight trip.

According to Greek, employees were instructed that during a week's stay at an out-of-town location, a company vehicle could be used to get food, and to travel between their work and lodging, but employees were not specifically told whether they were allowed to use the vehicle for other purposes. While Greek testified employees could drive to the supermarket or a movie if it was within the local area, he did not personally tell Flores her use of the van was so limited, he did not tell employees before the accident what would constitute local versus non-local driving areas, and he did not know whether his employees were aware of this distinction; instead, he believed it was a matter of "common sense." No one discussed with Flores whether she was allowed to run errands, go to the movies, or do something on her off hours while working out of town, and she

4.

was not told there was a limit on how far she could travel in the van after concluding her work day.

During the two years Greek supervised Flores, Flores traveled to some 40 to 50 central offices outside of Fresno to perform inventory work. On these trips, the van was her only means of transportation. Flores estimated that during the last six months of her employment, she spent 80 percent of her time on overnight trips.

In August 2009, Flores was assigned to work out of the Bakersfield office. She drove the van to Bakersfield on a Monday and worked there through Thursday of that week. On Thursday, August 13, 2009, Flores received a call from her daughter, who had a problem with a pet and needed money to address it. Since Flores was in Bakersfield and her daughter lived in Fresno, they arranged to meet somewhere between the two cities so Flores could give her daughter money. While Flores was traveling on State Route 99, she was involved in an accident with Medina, who was injured. Pacific Bell later concluded that Flores had left to meet her daughter before 3:30 p.m., during work hours. Flores, who had a couple of glasses of wine with her lunch that day, was intoxicated at the time of the accident.

Flores did not speak to anyone at Pacific Bell before she left to meet her daughter and did not think she needed to do so, since she planned to return to Bakersfield to work. Moreover, no one from Pacific Bell told her she was not allowed to take the van to go home if she had a personal emergency. Flores, who ultimately lost her job, believed she would have kept it had she not been drinking, as she had Pacific Bell's implicit permission to take the van and the van had been assigned to her for her regular use.

*The Underlying Action*

Medina filed a personal injury action against Pacific Bell and Flores in July 2011. Pacific Bell, which self-insured its company cars, including the van, refused to defend or indemnify Flores. While Pacific Bell conceded Flores was operating the van with its permission within the meaning of the financial responsibility laws, it asserted she was not

5.

acting in the course and scope of her employment at the time of the accident, and therefore it did not have enterprise liability for Medina's injuries under respondeat superior principles. Accordingly, Pacific Bell offered Medina $15,000, which was its statutory liability for permissive use of its vehicle.[2]

Flores had insured her personal vehicle through GEICO, but she did not initially notify GEICO of the accident because she believed Pacific Bell would cover the losses as she was driving the van on an out-of-town work assignment.[3] Flores' attorney tendered defense of the underlying action to GEICO in September 2012.

The policy GEICO issued for Flores's personal vehicle does not identify the van as an insured automobile. The GEICO policy, however, provides coverage for bodily injury or property damage arising out of the use of a "non-owned auto[,]" which the policy defines, in pertinent part, as "an automobile . . . not owned by or furnished for the regular use of either *you* or a *relative* . . . " The GEICO policy excludes from coverage accidents involving the use of a non-owned auto while the person using it is "employed or otherwise engaged in . . . any . . . business or occupation of any *insured* if the accident arises out of that business or occupation, . . . " (the business use exclusion).

---

[2] The parties subsequently sought the trial court's determination of Pacific Bell's liability based on a stipulated record and set of facts. The trial court found Flores was not in the course and scope of her employment at the time of the accident since (1) she was on a purely personal errand, which Pacific Bell did not authorize, (2) the trip was a substantial deviation from her normal employment duties, (3) the risk of the accident was neither typical, inherent, nor incidental to, nor created by, Pacific Bell's business, and (4) she was not on a special errand for Pacific Bell. Accordingly, the trial court determined that Pacific Bell could not be vicariously liable for Flores's actions. The parties stipulated Flores was a permissive user of the van for purposes of Vehicle Code section 17151, which limits a vehicle owner's liability to $15,000 for the injury of one person in one accident when that liability does not arise through the relationship of principal and agent, or master and servant.

[3] Pacific Bell never told Flores she needed to maintain her own insurance in the event of an accident while she was driving a Pacific Bell vehicle.

6.

GEICO investigated the circumstances of the loss and learned Pacific Bell owned the van. Based on information it obtained from a letter from Pacific Bell's attorney and a police report, GEICO concluded there was no coverage for the accident because Flores could not have reasonably believed she had permission to use the van when the accident occurred. GEICO advised Flores on October 10, 2012 that it declined to defend and indemnify her for the accident, and referred Flores to the policy's definition of "non-owned auto," as well as the section that states coverage applies to a non-owned auto when its use is "with the permission, or reasonably believed to be with the permission, of the owner and within the scope of that permission."

In August 2013, Flores assigned any rights she had against GEICO to Medina in exchange for a covenant not to execute against her personal assets. She and Medina agreed to enter into binding arbitration in the underlying action. Flores represented herself at the arbitration and stipulated to liability. The arbitrator found Flores liable for the accident and awarded Medina over a half-million dollars in damages. He also found that Flores had Pacific Bell's actual and implied consent to use the van at the time of the accident as (1) Flores was an 18-year employee who had been assigned the van for out-of-town assignments for the three years before the accident, and (2) Pacific Bell never imposed restrictions on Flores's use of the vehicle outside of work hours when she was assigned to work out of town. The arbitrator noted that Flores testified at the arbitration she asked Pacific Bell for permission to use her personal vehicle on out-of-town trips, but Pacific Bell refused.[4] The trial court entered the arbitrator's award as the judgment in the underlying action in February 2014.

---

[4] Medina admitted in this lawsuit that he is bound by the arbitrator's factual findings.

7.

*This Lawsuit*

Medina forwarded the judgment to GEICO and demanded payment, but GEICO declined and advised Medina there was no coverage for the accident. Medina filed this suit against GEICO in April 2014. Medina alleged in his second amended complaint causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, recovery of the policy limit under the GEICO policy pursuant to Insurance Code section 11580, subdivision (b)(2), and declaratory relief. Medina asserted GEICO was obligated to defend and indemnify Flores in connection with the underlying action, and sought to recover the $512,665.12 in damages the arbitrator awarded, as well as emotional distress damages, attorney fees, and punitive damages.

GEICO filed a motion for summary judgment, in which it contended there was a complete defense to Medina's claims against it because the GEICO policy did not afford coverage for his claims against Flores. Specifically, GEICO argued there was no coverage because (1) the van was furnished to Flores for her "regular use," and (2) the business use exclusion applied, as the accident arose out of Flores's occupation. In support of the motion, GEICO presented 91 material facts.

In opposing the motion, Medina did not dispute any fact material to coverage; of the 91 material facts he disputed only two – the exact date Flores's attorney tendered the underlying action to GEICO and the admissibility of a statement Flores made to the GEICO claims examiner.[5] In his own separate statement of material facts, Medina

[5] In a declaration in support of the summary judgment motion, GEICO's claims examiner stated he obtained Flores's statement as part of the investigation into coverage for the underlying action and Flores advised him the van was "furnished for her regular use for the four days she was assigned to" Pacific Bell's Bakersfield office. Medina objected to the admission of Flores's statement to the claims examiner on hearsay grounds, asserting she was not a party to the action and her statement was not testimonial. In response, GEICO asserted it was not offering the statement to prove the truth of the facts stated, but to show Flores admitted to GEICO that the van was furnished for her regular use when the accident occurred, which eliminated any potential for coverage and negated any duty to defend.

offered evidence that Flores did not take the van home after her shifts in Fresno, and she picked up and returned the van to the Fresno office when she went on out-of-town assignments.

Medina argued the regular use exception did not apply because the term "regular use" encompassed only the vehicle's primary use, not some incidental use, and here it was undisputed the van's primary use was for business purposes, while Flores's family emergency was an incidental use. He further argued that because Flores did not have the vehicle on weekends or during the evening, except when she was out-of-town, she did not have unrestricted access to the vehicle at all times and for all purposes. Medina contended the business use exclusion did not apply since the court in the underlying action found she was not in the course and scope of her employment at the time of the accident.

Following oral argument on the motion, the trial court took the matter under submission. The trial court subsequently issued a minute order in which it granted the summary judgment motion as: (1) GEICO submitted evidence the loss was not covered by its policy under the non-owned auto clause since Flores had nearly unlimited use of the van; (2) this shifted the burden to Medina to show the van's use was not unlimited and thereby create a triable issue of material fact; and (3) Medina failed to satisfy this burden, since the only evidence he offered was that Flores did not take the van home after her shifts in Fresno, which did not limit her use enough to place the van under the policy's coverage. The trial court sustained Medina's objection to the claims examiner's declaration.[6] Thereafter, a written order was entered which explained that GEICO's motion presented a purely legal issue of insurance contract interpretation; there was no

_____

[6] On appeal, GEICO contends the trial court erred in sustaining Medina's objection, as it is an admission by a party to the action and therefore admissible as an exception to the hearsay rule. We do not decide the issue because GEICO prevails even without this evidence.

9.

coverage under the GEICO policy for damages arising from the accident, since the van was neither an "owned auto" nor a "non-owned auto" as those terms were defined under the policy; and therefore GEICO did not owe a duty to defend or indemnify Flores in the underlying action.

## DISCUSSION

*Standard of Review*

"A trial court properly grants summary judgment where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) ' "We apply a de novo standard of review to an order granting summary judgment when, on undisputed facts, the order is based on the interpretation or application of the terms of an insurance policy." [Citations.] [¶] In reviewing de novo a superior court's summary [judgment] order in a dispute over the interpretation of the provisions of a policy of insurance, the reviewing court applies settled rules governing the interpretation of insurance contracts.' [Citation.] The ordinary rules of contract interpretation apply to insurance contracts. [Citation.] To protect the interests of the insured, coverage provisions are interpreted broadly, and exclusions are interpreted narrowly." (*Stellar v. State Farm General Ins. Co.* (2007) 157 Cal.App.4th 1498, 1503.)

"An insurer may 'seek[ ] summary judgment on the ground the claim is excluded,' in which case it has 'the burden . . . to prove that the claim falls within an exclusion. [Citation.]' [Citation.] To satisfy its burden, an insurer need not 'disprove every possible cause of the loss' and once the insurer establishes the claim is excluded, the burden shifts to the insured to show a triable issue of material fact exists." (*Roberts v. Assurance Co. of America* (2008) 163 Cal.App.4th 1398, 1406 (*Roberts*).) "In contrast, '[a]n insured has the burden of proving its claim falls within the scope of the policy's basic coverage, even where the insurer brings a motion for summary judgment.' " (*Gonzalez v. Fire Insurance Exchange* (2015) 234 Cal.App.4th 1220, 1230, citing *Roberts*, *supra*, 163 Cal.App.4th at

10.

p. 1407.)  Thus, when an insurer meets its initial burden on summary judgment of showing there is no coverage under the policy, the burden shifts to the insured to show a triable issue of material fact as to coverage.  (See, e.g., *Golden Security Thrift & Loan Assn. v. First American Title Ins. Co.* (1997) 53 Cal.App.4th 250, 255.)

The parties disagree about whether the non-owned auto provision is part of the GEICO policy's insuring clause defining the coverage or is an exclusion clause.  We need not resolve the issue because the distinction is principally relevant to the burden of proof.  Here, as we discuss below, GEICO discharged the burden of proving the van, by reason of its "regular use[,]" is outside the policy's coverage, and Medina failed to create a triable issue of fact on that issue.  (See *Kindred v. Pacific Auto. Ins. Co.* (1938) 10 Cal.2d 463, 466 (*Kindred*).)

*The Non-Owned Auto Provision*

Medina asserts the sole issue for our determination is whether the facts, which he admits are undisputed, establish "regular use" and therefore exclude coverage under the GEICO policy.  Medina maintains the trial court erroneously found the GEICO policy did not afford coverage on the van because it ignored the controlling case law regarding "regular use" of vehicles.

The provision at issue is contained in Section 1 of the GEICO policy, which addresses "Liability Coverages."  Under the subheading "Losses We Will Pay For *You*:" the policy states: "Under Section 1, we will pay damages which an *insured* becomes legally obligated to pay because of: [¶] 1. *bodily injury*, sustained by a person, and [¶] 2. damage to or destruction of property, [¶] arising out of the ownership, maintenance or use of the *owned auto* or a *non-owned auto*. . . . "  The policy defines "*non-owned auto*" as "an automobile or *trailer* not owned by or furnished for the regular use of either *you* or

11.

a *relative*, other than a *temporary substitute auto*. An auto rented or leased for more than 30 days will be considered as furnished for regular use."[7]

Thus, the GEICO policy covers a car Flores owned or one she used as a temporary substitute for a car she owned. If a car was not owned by her and was not being used as a temporary substitute vehicle, but instead was furnished to her for her regular use, it was excluded from coverage under the GEICO policy. (*Highlands Ins. Co. v. Universal Underwriters Ins. Co.* (1979) 92 Cal.App.3d 171, 174-175 (*Highlands*) [interpreting similarly worded policy].) Here, Flores did not own the van and she was not using it as a temporary substitute vehicle. Accordingly, the van was excluded from coverage under the GEICO policy if it was "furnished for [her] regular use."

Long ago, our Supreme Court concluded a reasonable interpretation of the phrase "regular and frequent use" is "the principal use, as distinguished from a casual or incidental use, in the regular course of the assured's business." (*Kindred, supra,* 10 Cal.2d at p. 465.) There, the insurance policy provided coverage for a commercial truck, but only if the truck's "regular and frequent use" was confined to a 50-mile radius of where the truck was garaged in El Centro, California, and "regular and frequent trips" were not made beyond that radius. (*Id.* at pp. 464-465.) The Court concluded there was no coverage under the policy as the truck, which had been moved to Fresno County and was being used continuously to gather picked fruit from orchards and haul it to Los Angeles, "was used principally and frequently, if not exclusively, in the regular course" of the insured's business more than 50 miles from the place of its "principal garaging." (*Id.* at p. 465.)

---

[7] The policy defines a "temporary substitute auto" as "an automobile or *trailer*, not owned by *you*, temporarily used with the permission of the owner. This vehicle must be used as a substitute for the *owned auto* or *trailer* when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction."

The interpretation and application of the phrase "furnished for regular use" was first addressed in *Pacific Auto. Ins. Co. v. Lewis* (1943) 56 Cal.App.2d 597 (*Lewis*). There, the policy stated coverage did not apply when the insured was driving another automobile " 'furnished for regular use to the named insured.' " (*Id.* at pp. 598-599.) The issue was whether there was coverage under the policy where a car salesman, who had access to his employer's demonstrator cars which he sometimes drove for his personal use in the San Diego area, obtained special permission to drive the car to Pomona on a personal matter and was involved in an accident on the way. (*Id.* at pp. 598-600.)

Citing *Kindred*, the court stated that " 'regular use' reasonably suggests a principal use, as distinguished from a casual or incidental use." (*Lewis*, *supra*, 56 Cal.App.2d at p. 600.) The court explained that even if the salesman did not have exclusive use of the car, other elements may be considered in determining the policy's intended meaning: "Whether an automobile is furnished by another to an insured for his regular use may reasonably depend upon the time, place and purpose for which it is to be used. One furnished for all purposes and at all times and places would clearly be for his regular use. One furnished at all times but strictly for business purposes alone could hardly be said to have been furnished for his regular use at a time and place when it was being used for personal purposes. It may be assumed that when a car is furnished all of the time for business purposes, with permission to use the same for incidental personal purposes, all within a certain area, the car might be said to be furnished for regular use within that area. But when a car thus furnished for such a use is driven to a distant point on one occasion, with the special permission of the one furnishing the car, that particular use would hardly seem to be a 'regular use' of the car. It cannot be said, as a matter of law, that such a use on a particular occasion, which is a departure from the customary use for which the car is furnished, is a regular use within the meaning of these clauses of the policies." (*Id.* at pp. 600-601.)

The court stated the provision may be reasonably interpreted as intending to provide for a regular use at the time and place in question, and not for an exceptional and single use by special permission. (*Lewis*, *supra*, 56 Cal.App.2d at pp. 600-601.) While the salesman's use of the car, which was mainly for business and occasionally for personal errands, may have been "more or less a 'regular use,' that use had always been confined to the area where his work was done. Any such personal use was admittedly allowed for the purpose of furthering his work as a salesman in that area. But such use, regular or otherwise, did not contemplate or include his use of the car for trips to distant points on personal visits." (*Id.* at p. 601.) The court found persuasive the fact that the salesman had never before used a demonstrator car for a personal trip away from San Diego, which indicated such a trip was not within any regular use for which the car was furnished to him, and the fact he asked for and received special permission for this use indicated the trip was outside any possible regular use. (*Ibid.*) The court concluded the most reasonable view of the situation was that the car was not furnished for his regular use so far as this particular trip was concerned. (*Id.* at pp. 600-601.)

As shown in *Lewis*, the elements to consider in determining whether a car was furnished for regular use "include time, place and manner of use, purpose or type of use, and restrictions on use. Primarily, the issue presents a question of fact which requires an interpretation of the language of the policy to the facts involved." (*Highlands*, *supra*, 92 Cal.App.3d at pp. 175-176.)

Relying on *Kindred* and *Lewis*, courts have found that a vehicle was not furnished for regular use where: (1) the insured regularly used his brother's truck to drive to and from work, but never for personal purposes until the night of the accident (*Comunale v. Traders & General Ins. Co.* (1953) 116 Cal.App.2d 198, 202); (2) a son used his father's car only on special occasions and only with his father's permission (*Juzefski v. Western Cas. & Surety Co.* (1959) 173 Cal.App.2d 118, 122); (3) a government car was furnished to an employee only for business purposes and the accident occurred during an isolated

14.

incident of personal use (*Safeco Ins. Co. of America v. Thomas* (1966) 244 Cal.App.2d 204, 206-207); (4) a prospective car buyer was test driving a car on loan from the dealer for several weeks before deciding to buy it (*Truck Ins. Exch. v. Wilshire Ins. Co.* (1970) 8 Cal.App.3d 553, 561); and (5) a daughter's use of her father's truck was limited to specific purposes, limited in time and area, and she had to obtain her father's consent and keys before any use (*Interinsurance Exchange v. Smith* (1983) 148 Cal.App.3d 1128, 1136-1137 (*Smith*)).

In contrast, courts have found a vehicle was furnished for regular use where: (1) a daughter sold her own car and began driving her mother's car after her mother had a stroke, and thereafter used her mother's car, to which she had the keys, whenever she wanted for all purposes and occasions (*Northwest Cas. Co. v. Legg* (1949) 91 Cal.App.2d 19, 22-23); (2) a driver agreed to purchase the car, but deferred payment while he awaited the receipt of specially ordered tires, and had used the car without limitation for nearly six weeks when the accident occurred (*Highlands*, *supra*, 92 Cal.App.3d at pp. 173-174, 176); and (3) a daughter was the exclusive user of a truck registered in her father's name but not insured for her use, and no limitations were placed on her use of the truck, for which she had her own key (*Nationwide Mutual Insurance Company v. Shimon* (2015) 243 Cal.App.4th 29, 36-37).

Here, Medina contends the van was not furnished to Flores for her regular use because Pacific Bell furnished the van primarily for business purposes. Medina argues that Flores's use of the van when the accident occurred was not a regular use since she was on a personal mission. According to GEICO, however, Flores's use of the van was a regular use because Pacific Bell furnished the van to her for both business and personal uses, and she could use the van for whatever purposes she wanted.

We agree with GEICO. The undisputed facts show Flores had the keys to the van, which was assigned to her exclusively, and she was authorized to use it for both business and personal purposes. While Pacific Bell furnished the van to Flores because she

15.

needed it to perform her job, it did not place any restrictions on her use of it. Even if, as Medina contends, she did not have unrestricted access to the van at all times because she was required to return the van to the Fresno office at the end of her work day while working in the local area and when she returned from out-of-town business trips, Flores had unlimited use of the van when it was in her possession and the van was assigned to her for her exclusive use. When she was out of town on business, the van was her only means of transportation since Pacific Bell refused to allow her to use any other vehicle. Since she could use the van while on out-of-town trips for business and personal use, at the time of the accident she was using the van in a manner permitted by Pacific Bell and within the scope of the purposes for which the van was furnished. These facts establish that the van was furnished to Flores for both business and personal reasons, and her use of the van at the time of the accident was a regular one.

We reject Medina's assertion that because Flores was provided the van primarily for business purposes, her use of the van for personal purposes at the time of the accident was not a regular one. As *Lewis* instructs, whether a vehicle is furnished to an insured for regular use depends on the time, place and purpose for which it is to be used, and whether its use at the time of the accident was "a departure from the customary use for which the car is furnished." (*Lewis*, *supra*, 56 Cal.App.2d at pp. 600-601.) Here, the van was given to Flores for both business and personal use during her work days and while on out-of-town business trips, and her personal use of the van at the time of the accident was not a departure from the customary use, namely business and personal use while on out-of-town trips, for which the van was furnished. That business use was the reason she was given the van does not render her use at the time of the accident irregular when she was authorized to use the van for both business and personal purposes.

The purpose of the non-owned auto provision supports our analysis in this case. The intent and function of this provision "is to prevent abuse, by precluding the insured and his family from regularly driving two or more cars for the price of one policy. The

16.

purpose of the provision is to cover the occasional use of other cars without payment of an additional premium but to exclude the frequent or habitual use of other cars, which would increase the risk on the insurer without increasing the premium of the insured." (*Highlands*, *supra*, 92 Cal.App.3d at p. 176.)  Put another way, the provision is "intended to provide coverage for occasional use of other nonowned cars without requiring payment of additional premiums.  For obvious reasons, coverage was not intended to include the *regular* use of other cars because insurance companies would necessarily bear an increased risk without receiving a related increase in premiums.  Specifically, the exclusion serves to prevent a situation in which the members of one family or household may have two or more automobiles actually or potentially used interchangeably but with only one particular automobile insured." (*Smith, supra,* 148 Cal.App.3d at p. 1138.)

The non-owned auto provision excludes coverage for the situation before us, where a person has unlimited use of a vehicle which she drives in addition to her own for some time without paying an additional premium to her insurer.  Flores's use of the van at the time of the accident was not an occasional use, but rather was a frequent use which increased the risk to GEICO without it receiving a related increase in premiums.  Her use of the van in lieu of her own car on out-of-town business trips for both business and personal purposes shows two vehicles were available to her that could be used interchangeably, but with only her own car insured.  This is the type of abuse the non-owned auto provision was intended to prevent.

Medina's reliance on *Jurd v. Pacific Indemn. Co.* (1962) 57 Cal.2d 699 (*Jurd*), is misplaced.  Medina claims our Supreme Court articulated a "public policy" with regard to "regular use" of favoring the provision of coverage.  The Court in *Jurd*, however, did not address the non-owned auto provision at issue here; instead, it addressed the scope of the permissive user statute, stating it reflected a legislative policy to protect the public when a vehicle is operated by one other than an insured owner with his consent and to broaden coverage of automobile liability policies for the public's benefit.  (*Id.* at pp. 702-

703, 704-705.) To effectuate that purpose, the Court held that a public entity could be liable for an accident that occurred during an employee's use of a publicly owned vehicle for private purposes, noting that it was "not uncommon for publicly owned automobiles to be used for their private purposes by public officers and employees with the permission of their superiors." (*Id.* at p. 705.) The case has no bearing on the issue here, namely whether Pacific Bell furnished the van to Flores for her regular use.

Medina urges us to adopt a liberal interpretation of the term "regular use" and find uses like Flores's irregular. He complains that if we do not find coverage, people like Flores will be uninsured when operating a company vehicle outside the course and scope of their employment, which means that such drivers will be prohibited from receiving compensation for pain and suffering under Civil Code section 3333.4, and those injured by such drivers will have no recourse.

As GEICO points out, whatever the merit of these claims, the employee's personal automobile insurer is not the party who should be responsible. Pacific Bell could have easily purchased liability coverage for Flores's personal, non-employment related uses of the van, but it did not. (See *Baker v. DePew* (Mo. 1993) 860 S.W.2d 318, 320 [employee who had unlimited permission from employer to use employer's truck for business and personal use was an insured under omnibus coverage clause in employer's automobile policy which provided coverage to anyone using the truck with insured's permission].) Instead, it apparently sought to place a portion of its responsibilities onto the shoulders of its employees and their personal auto insurers. Unfortunately, Pacific Bell never told Flores that she was uninsured beyond its permissive user liability whenever she used the van for personal reasons. Had Flores known, she could have purchased insurance to cover her operation of the van in the form of an "extended non-owned automobile" endorsement to her personal auto policy. (*Di Orio v. New Jersey Mfrs. Ins. Co.* (N.J. 1979) 79 N.J. 257, 264, 398 A.2d 1274, 1277-1278.) We see no reason to depart

from the language of the GEICO policy and impose the burden on GEICO, especially where Pacific Bell and Flores could have acted to ensure coverage in this situation.

In sum, we conclude, based on the undisputed facts, that the van was furnished to Flores for her regular use and, at the time of the accident, she was using the van in accordance with that regular use.[8] Therefore the GEICO policy does not afford coverage for Medina's injuries incurred in the accident. Since there is no coverage, Medina's claims as alleged the second amended complaint fail and the trial court properly granted GEICO's summary judgment motion.[9]

---

[8] Although Medina concedes the facts are undisputed, he contends the issue of whether Flores was furnished the van for regular use should be submitted to the trier of fact because the issue is normally a factual one and "the facts presented in the present case are a matter of first impression." Without a factual dispute, however, the interpretation of the GEICO policy and its application to undisputed facts is a question of law. (*Westrec Marina Management, Inc. v. Arrowood Indem. Co.* (2008) 163 Cal.App.4th 1387, 1391.) Based on the facts GEICO submitted, it established that the van was furnished to Flores for her regular use. Because Medina failed to create a triable of issue of fact, the facts are undisputed and we decide the issue as a matter of law.

[9] Since we determine there is no coverage based on the non-owned auto provision, we do not reach GEICO's alternative argument that the business use exclusion applied.

## DISPOSITION

The judgment is affirmed.  Costs on appeal are awarded to GEICO.

_____
GOMES, J.

WE CONCUR:


_____
HILL, P.J.


_____
SMITH, J.